KNOLL, Judge.
The parents of four minor children appeal the judgment of the trial court in favor of the Department of Health and Human Resources (DHHR) terminating their parental rights and making the children eligible for adoption. The names of the parties involved are omitted in the title and in this opinion. The parents seek to have their parental rights restored contending: (1) the evidence shows that DHHR made no investigation of the parents for a period exceeding one year before the termination hearing, therefore, DHHR was unable to testify concerning the present condition of the parents’ home; and (2) that DHHR, after removing the children from the parents’ home, made no effort to supervise or aid the parents in rehabilitation. We affirm, finding the record supports that the termination of parental rights would be in the best interest of the children.
FACTS
The mother, 32 years of age, gave birth to four children: male child D.O.B. January 19, 1973; female child D.O.B. December 6, 1973; male child D.O.B. March 12, 1976; and male child D.O.B. July 6, 1977. All children have the same father, but were born out of wedlock. A few years after the youngest child was born, the parents were married. The father, 63 years of age, is a retired garbage collector and receives Social Security benefits of $305 per month. The mother is unemployed but has a combined monthly income of $48 from Social Security and S.S.I. Dr. Milton Rhea, a psychologist, opined that both parents are mildly intellectually retarded; however, their retardation had no effect upon their parenting ability.
DHHR was working with and assisting the parents since 1972, while the mother was pregnant for the first child. DHHR’s efforts continued for several years but its efforts were in vain. Despite its services that included teaching homemaker skills and money management, the conditions worsened. In 1977 the utilities were disconnected for nonpayment; the family lived in the house for several months without utilities. The house was unsanitary and infested with rats. Packages of food were left open and infested with roaches; spoiled food remained on top of the stove for several days. The toilet and other containers in the bathroom were filled with old human feces. The entire family lived basically in one room which functioned as the bedroom and living room; it was very dirty and unsuitable living quarters for two *243 adults and four children. The parents did not feed the children regularly or properly and did not send their children to school regularly. The father drank to excess and physically abused the mother.
In 1978, the State petitioned the court to determine neglect and environmental conditions injurious to the children’s welfare. After a hearing, the court ordered that the family unit be placed on supervised probation for an indefinite period on the following specific terms: (1) that the father not appear in an intoxicated condition in the family home; (2) that the mother keep the family home clean and allow inspection by the Office of Family Services every two weeks; (3) that the mother see that the school age children attend school regularly; and (4) that the father give sufficient amount of earnings or income to the mother for food stamps, utilities and rent.
The parents did not respond to the terms of probation and the family’s condition continued to deteriorate. Therefore in 1979 a removal action was initiated by DHHR, wherein the State obtained custody of the children and placed them in foster care for six years. Two of the children live with a foster family in Winnfield and the other two live with a foster family in Montgomery.
In 1983, the State filed a petition to terminate parental rights under LSA-R.S. 13:1601(B), (D) and (F). After an evidentia-ry hearing, the juvenile court terminated parental rights and declared the children eligible for adoption.
TERMINATION OF PARENTAL RIGHTS
In the present case parental rights were terminated pursuant to LSA-R.S. 13:1601(B), (D) and (F), which provides:

“The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court’s jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.

* * * * * *

B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.

(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.

⅜ * sje s|t *

D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.

(2) The child was removed from the custody of the parents by judicial order due to the parent’s abuse or neglect of the child.

(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents, (j) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents.

sfc ⅝ $s ⅜ jjt ⅜

F. (1) The child has been in the custody of the Department of Health and Human Resources for a period of at 
*244
least one year pursuant to a court order.

(2) The child was removed from the custody of his parent because of the parent’s mental illness, mental retardation, or substance abuse; and such condition was so profound that it rendered the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.

(3) The continued custody of the child was necessitated by the parent’s failure or refusal to effect a suitable alternative placement of the child other than foster care.

(4) Every reasonable effort has been made under the circumstances to rehabilitate the parent and such efforts have failed.

(5) There is no reasonable expectation of the parent being rehabilitated.

(6) Expert testimony established that termination of parental rights and adoption are in the child’s best interest. ”

A parent may be deprived of custody of his children only if he is mentally, morally or otherwise unfit or incapable of caring for them, or for some other reason it would be detrimental to the children’s health, safety and welfare to permit them to remain with the parent. State In Interest of Quilter, 424 So.2d 394 (La.App. 2nd Cir.1982); In Re State Ex Rel. Thaxton, 220 So.2d 184 (La.App. 1st Cir.1969).
Parental rights may not be terminated absent evidence found to be at least clear and convincing. LSA-R.S. 13:1603; Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State In The Interest of Wisham, 452 So.2d 366 (La.App. 1st Cir.1984). Absent an abuse of discretion, the trial court’s findings will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
The parents do not dispute that the State presented clear and convincing evidence to substantiate its claims pursuant to LSA-R.S. 13:1601(B), (D) and (F). They argue that DHHR made no investigation for a period exceeding one year prior to the termination hearing, and that DHHR made no effort to supervise the parents after the children were removed. We disagree. There is overwhelming evidence to the contrary.
The termination hearing was held on October 17-18, 1983. DHHR continued to provide the parents with homemaker services until December 13, 1982, when the services were refused and the father told the social worker not to return to his home. Since the children were placed in foster care in 1979, DHHR continually worked toward its goal of restoring the family unit, but all of its attempts were met with dismal response by the parents.
In 1982, DHHR had the mother examined by Dr. Rhea to review her status concerning her ability to care for her minor children. He also examined three of the children. In a follow-up evaluation of the parents in October 1983, Dr. Rhea opined that the mother had an “outright denial of her responsibility and a lack of sensitivity to the physical needs of her children.” He further stated that both parents lacked the personal resources and motivation to provide an adequate environment for the care of their dependent children. It was his recommendation that the children be permanently separated from their parents. Dr. Stuart Kutz, a psychologist who examined two of the children, also opined that it would be in the children’s best interest to terminate parental rights.
At the time of the termination hearing, the parents’ conditions were basically the same. The mother admits that the conditions still exist but states she wants the children back when the conditions improve. While the children have been in foster care the parents have shown no concern or interest in them; it was more from the prompting and assistance of DHHR that the parents saw their children, and even *245 then, only occasionally because of the parents’ lack of cooperation. The parents, despite adequate notice, failed to attend the on-going family team conference.
After a careful review of the record, we are convinced that the State proved its case by overwhelming evidence and that the best interest of the children dictates termination of parental rights.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.