424 So.2d 394 (1982)
STATE of Louisiana In the Interest of Christy QUILTER and Angela Quilter.
No. 15086-CAJ.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
*395 Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
James Sharp, Jr., Monroe, for appellants.
Before HALL, JASPER E. JONES, NORRIS, JJ.
JASPER E. JONES, Judge.
Mrs. Ethel Aswell, mother of Christy and Angela Quilter, and her husband, Sidney Aswell, appeal a judgment awarding custody of the minors to the Department of Health and Human Resources, terminating Mrs. Aswell's visitation rights and ordering the State to commence proceedings to terminate her parental rights. We amend and affirm.
Appellants set out four assignments of error. They contend the trial judge erred in: 1) denying their motion for continuance; 2) holding an evidentiary hearing over their objection; 3) refusing to reopen testimony; and 4) ruling contrary to law and evidence.
The Facts
Ethel Aswell is 32 years old. Psychological tests indicate she is a slow learner. She is the mother of eight children, the first of whom was born when she was only 14. Ethel's six oldest children were released by her for adoption. Christy, age 7, and Angela, age 4, are Ethel's two youngest children.
*396 In September, 1977, the department first learned that Ethel was not providing adequate care for Christy. The department then began providing Ethel with services such as counseling for herself, day care and medical treatment for Christy in an effort to improve the situation. However, after Angela's birth in July, 1978, the situation again deteriorated. In November, 1978, Ethel voluntarily gave custody of the two little girls to the department. Thereafter Ethel had almost no contact with the girls until August, 1979, at which time she began to show some interest in regaining custody of the girls.
In October, 1979, Ethel married Sidney Aswell. Mrs. Aswell continued to express an interest in regaining custody of her daughters and on July 15, 1980, the department allowed the girls to begin living with the Aswells on a trial basis.
The record shows that the marriage of Ethel and Sidney has been full of discord. Their relationship has been characterized by almost constant heated arguments which usually include grave threats and which have led to physical blows on several occasions. Though the girls received adequate physical care while living with the Aswells they were exposed to the frequent confrontations between their mother and Sidney.
The young girls also became a frequent target of their mother's consuming hostility and as such they were the repeated subjects of verbal abuse and threats by their mother. Mrs. Aswell threatened her daughters with having their throats cut or return to a foster home. Mrs. Aswell admitted that she subjected her daughters to mental abuse by threatening them and by screaming at them. The department terminated the trial visit on January 30, 1981, two weeks earlier than planned, because of fears for the girls' safety.
Following their removal from the Aswell home the department commenced these proceedings.[1] An initial hearing was held on April 14, 1981. At that time the trial judge ordered the department's temporary custody of the girls continued and further ordered the Aswells to participate in marriage counseling, Parents Anonymous, parenting skills classes, treatment at the mental health center and meetings with the department staff working on this case.
Though the Aswells did at least sporadically attend most of these activities, they regarded them as wastes of time, resented their required attendance and profited very little from them. The Aswell home continued to be a strife ridden place where the spouses subjected each other to verbal and physical abuse. On one occasion because of her extreme anger with Sidney Mrs. Aswell cut all of her hair from her head and threatened to commit suicide. On another occasion she stated that if the custody of the children wasn't returned to her she was going to blow Sidney's head off.
On December 14, 1981, a second hearing was held. The trial judge by an order signed January 5, 1982, and approved as to form by appellants' counsel, released appellants from required attendance of the various activities and continued temporary custody in the department. The order also set May 25, 1982, as the next hearing date for this matter.
The situation in the Aswell home remained unchanged in the early months of 1982. Ethel and Sidney continued to have frequent arguments.[2] Ethel was arrested because of her behavior during one confrontation of this period.
During this period the Aswells were allowed visitation with the girls twice per month. The girls, particularly Christy, experienced behavioral problems following these visits. Apparently Mrs. Aswell instructed Christy to misbehave at the foster home and in school. Mrs. Aswell also told *397 the girls she would kidnap them if they were not returned to her.
The department had Mrs. Aswell and the girls examined in preparation for the May hearing. Dr. Bobby Stephenson, a psychologist who had previously examined Ethel and Christy, examined all three. His report on Mrs. Aswell states:
"By history, Mrs. Aswell has not been able to provide adequately for her children (sic) psychological needs and the history and present test data suggest that the likelihood of a significant change in regard to her being able to provide nurturing is rather remote. There may be a decrease in emotionality as time passes which would appear to be an improvement in her functioning but this examiner feels that the long term prospect of Mrs. Aswetl (sic) being able to provide adequate nurture for young children is very limited. Such poor prognosis for change suggest (sic) that the children's best interest would be served by freeing them for adoption as they would have to remain in foster care for an extended period of time." Rec. p. 277.
Dr. Stephenson testified that his examination established that Mrs. Aswell was easy to anger, highly emotional, set to overreact to the point of exploding with slightest provocation. He stated these characteristics were common in her behavior. He stated that if a child did some act that was slightly frustrating to Mrs. Aswell she would likely react by engaging in a "great, long, screaming, yelling kind of thing." Dr. Stephenson stated that both of the girls had been adversely emotionally affected by the abuse to which their mother had subjected them and the environment that exists in her home. He recommended that they not be required to return to live in these circumstances.
On May 25, 1982, appellants moved for a continuance. Their motion was denied and the hearing was held. Both the State and the appellants presented evidence. At the conclusion of the hearing the trial judge found the evidence "overwhelmingly in favor of the State."
On May 26, appellants made a motion to reopen testimony which was denied by the trial judge. Appellants then made a motion for a new trial which was also denied. The Aswells then took this appeal.
Assignments # 1 and # 3
Through these assignments of error appellants attack the trial judge's denial of their motions for a continuance and to reopen testimony.
Reopening the record to allow the presentation of additional evidence would have amounted to a post-hearing continuance. Cf. Sather v. White, 388 So.2d 402 (La.App. 1st Cir.1980) (holding the record open for additional testimony amounts to a continuance). Thus, the trial judge's action with respect to both motions should be assessed according to the standards applicable to action on motions for continuances.
The basis for these motions was that appellants' counsel was unaware that an evidentiary hearing was to be held and consequently, was not prepared. The trial judge was of the strong opinion that appellants' counsel had full notice of the hearing[3] and we note that appellants' counsel had approved the form of the January 5 order which set May 25 as the hearing date.
As the motions were not based on any peremptory grounds under LSA-C.C.P. art. 1602 they are governed by LSA-C.C.P. art. 1601. Under that article the trial judge has wide discretion in acting on a motion *398 for continuance and his ruling will not be disturbed on appeal absent a clear showing of his abuse of that discretion. Sauce v. Bussell, 298 So.2d 832 (La.1974); Thurmon v. Thurmon, 377 So.2d 447 (La.App. 2d Cir. 1979); Sather v. White, supra.
This matter had been before the trial court for over three years at the time appellants made their motions. During that extended period the trial judge and the department went to considerable lengths in an effort to improve the situation to a point where custody of the girls could be returned to Mrs. Aswell but no real progress toward that goal was made. The status quo was highly unsatisfactory and very harmful to the emotional well-being of the girls.
These factors created a pressing need that this matter be resolved. When that need is coupled with appellants' counsel's knowledge of the hearing nearly four months in advance we discern no abuse of discretion in the trial judge's refusal to delay this matter further by granting either of appellants' motions.
These assignments are without merit.
Assignment # 2
Through this assignment appellants contend that the trial judge erred in holding an evidentiary hearing, over their objection, which denied them a fair trial.
We begin by noting that it does not appear from the record that appellants objected to the hearing in any way other than their motion for a continuance. We also note that this assertion is, as are all others made by appellants, totally unsupported by any authority.
Appellants had ample notice and adequate time to prepare for the hearing. Any unfairness resulted solely from their failure to avail themselves of their opportunity to prepare. They now seek to avail themselves of their own neglect to reverse the judgment. This they cannot do.
This assignment of error is without merit.

Assignment # 4
Through their final assignment of error appellants contend that the judgment is contrary to law and evidence. They argue that the trial judge placed excessive weight on the testimony of Dr. Stephenson and failed to consider conditions in the foster homes.
Appellants argue that the trial judge placed excessive weight on the testimony of Dr. Stephenson in light of the amount of time he had spent with the persons involved. We disagree.
Dr. Stephenson is an experienced psychologist. He twice evaluated Mrs. Aswell and Christy and he evaluated Angela once. These evaluations required approximately two and one-half hours each. Thus, Dr. Stephenson has spent considerable time with those involved here. The evaluation of Mrs. Aswell's personality by Dr. Stephenson is corroborated by admissions contained in Mrs. Aswell's testimony of highly emotional and angry behavior. The testimony of Mr. Aswell relative to the daily angry confrontations that occurred between him and Mrs. Aswell until three months before the May 25 hearing and the admission by Mrs. Aswell that she was responsible for all of these arguments further corroborates Dr. Stephenson's evaluation of Mrs. Aswell. The testimony of Mrs. Joy Camp elicited on cross examination by Mrs. Aswell's attorney wherein she related numerous incidents concerning confrontations between Mr. and Mrs. Aswell, of which Mrs. Aswell had informed her and which occurrences, with one exception, Mrs. Aswell did not deny, further support Dr. Stephenson's evaluation. For these reasons Dr. Stephenson's testimony and opinions were entitled to the considerable weight they were accorded by the trial judge.
The appellants also argue that the trial judge did not consider the effect of the foster homes on the girls. Again we disagree.
The record shows that the foster homes in which the girls were placed were good environments in which they received affection and excellent treatment and to which they adapted well. The trial judge's preliminary remarks and oral reasons for judgment show a thorough familiarity with all *399 aspects of the record. Thus, we conclude that the trial judge was aware of and did consider the environment and effect of the foster homes in reaching his decision.
A parent may be deprived of custody of his children only if he is mentally, morally or otherwise unfit or incapable of caring for them, or for some other reason it would be detrimental to the child's health, safety and welfare to permit them to remain with the parent. In re State Ex Rel. Thaxton, 220 So.2d 184 (La.App. 1st Cir.1969).
The record clearly shows that Mrs. Aswell is incapable of meeting the emotional needs of her daughters. When in her care Christy and Angela are subjected to not only damaging neglect of their emotional needs but also to active emotional abuse. The state has made, as the trial judge put it, an "overwhelming" showing that Christy and Angela are "child(ren) in need of care" under LSA-C.J.P. art. 13[4] which provides:
"(14) `Child in need of care' means a child:
... (b) Whose physical, mental or emotional condition is substantially threatened or impaired ... as a result of the parent's neglect or imposition of cruel punishment; ..."[5]
The trial judge properly placed the children in the custody of the department. LSA-C. J.P. art. 85 A(2).
Appellants' fourth assignment of error is without merit.
The trial judge in his reasons for judgment stated, "Finally, the Court orders that the state immediately proceed with a petition for formal termination of parental rights of the mother, the natural mother, Mrs. Ethel Crain Aswell." The judgment appealed awards full custody of the children to the department, terminating visitation privileges to Mrs. Aswell and the last paragraph provides:
"That a petition shall be filed for termination of all parental rights of Mrs. Ethel Lee Aswell, mother of these two children."
This provision of the judgment may be subject to the interpretation that the trial judge has made a determination to permanently terminate appellant's relationship with her daughters. The statutory requirements for terminating parental rights are contained in La.R.S. 13:1600-13:1604. These provisions set forth special procedural requirements, specific conditions which must be met along with detailed burden of proof requirements. These proceedings were not filed under these statutory provisions and the posture of the proceedings does not comply with all of their requirements and for these reasons we amend the judgment by eliminating the last paragraph relating to termination of parental rights.
AS AMENDED THE JUDGMENT IS AFFIRMED AT APPELLANT'S COSTS.
NOTES
[1] This is an action to have Christy and Angela adjudicated as children in need of care under the Code of Juvenile Procedure as authorized by R.S. 14:403 G(9).
[2] Ethel's extreme lack of self-control is illustrated by the fact that she berated the children and clashed with her husband even while department workers were in her home to observe, rather than being able to curb herself during these brief visits.
[3] Included in the trial judge's written reasons for denying appellants' motion to reopen the testimony is the following statement:

"2. Mover and counsel were advised of the date of this hearing in December, 1981. Mover was advised by her caseworker that evidence of an evaluation she submitted to would be used in Court. Additionally, on the date of Monday, May 24, 1982 the Court and counsel for mover met in Chambers and discussed a problem of witnesses that mover had requested counsel subpoena to the hearing.
3. Mover and counsel for mover were fully aware of the nature and content of the hearing conducted on Tuesday, May 25, 1982 and had been so aware for several months preceding the hearing."
[4] Though the trial judge did not specifically make this finding it is implied by his judgment.
[5] The concept of "neglect" also includes abuse. State in Interest of Black, 310 So.2d 174 (La. App. 4th Cir.1975); writ refused, 313 So.2d 829 (La.1975).