445 So.2d 101 (1984)
STATE of Louisiana In the Interest of Christy QUILTER & Angela Quilter.
No. 15935-CAJ.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Richard Ducote, New Orleans, for plaintiff-appellant Dept. of Health & Human Resources.
David Haynes, West Monroe, for Mrs. Ethel Aswell.
Lee Ineichen, Monroe, for Christy & Angela Quilter.
*102 Before PRICE, HALL and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
The State petitioned to have the parental rights of Mrs. Ethel Aswell, mother of Christy and Angela Quilter, judicially terminated under La.R.S. 13:1600-1604. Mrs. Aswell opposes the termination. After a hearing at which the State and Mrs. Aswell presented evidence, the trial court found the State failed to prove one of the necessary elements in its burden of proof and refused to order the termination.[1] The State appeals. We affirm.
The parties were before this court on a previous occasion when Mrs. Aswell appealed a judgment dated June 11, 1982 which maintained custody of Christy and Angela in the Department of Health and Human Resources and terminated Mrs. Aswell's rights to visit with the children while they were in foster care. As part of that judgment, the State was ordered to file termination of parental rights proceedings. We amended the judgment to eliminate the order to file termination of parental rights proceedings and as amended affirmed the judgment. State in Interest of Quilter, 424 So.2d 394 (La.App. 2d Cir.1982).
Christy, age 8, and Angela, age 5, are still in foster care.
The background facts relevant to the instant proceeding are contained in our previous opinion. They will not be repeated here. Three noteworthy circumstances have occurred to Mrs. Aswell subsequent to the judgment of June 11, 1982 and which are not reviewed in our previous opinion: (1) In August, 1982 Mrs. Aswell attempted suicide; (2) Mr. and Mrs. Aswell, commencing in September of 1982 and extending through May of 1983, participated in extensive marriage counseling sessions with Rev. Don Wineinger; and (3) Mrs. Aswell underwent a religious conversion experience in April, 1983 shortly before this case came to trial in June, 1983.
Because the termination of parental rights is such a severe and permanent action, the law requires the State to meet an onerous burden of proof before termination will be ordered. R.S. 13:1601 defines what the State must allege and prove in several different situations. The instant proceeding was filed under 13:1601 D. In relevant parts 13:1601 provides:
§ 1601. Petitioning for the termination of parental rights

The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.[2]
. . . . .
D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.

(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the *103 department recommends that it would not be in the best interest of the child to be reunited with his parents. (emphasis supplied)
In termination proceedings brought under 13:1601 D, the State must prove each of the four required conditions of termination by clear and convincing evidence. R.S. 13:1603 A.[3]
After considering all the evidence, the trial court found that the State had met its burden of proving elements (1), (2), and (4) of 13:1601D but it failed to prove the part of condition (3) which requires there be no reasonable expectation of reformation on the part of Mrs. Aswell.
The State assigns as error the trial judge's determination that the State failed to prove by clear and convincing evidence there is no reasonable expectation of reformation on the part of Mrs. Aswell.
The trial court based its finding on expectation of reformation upon the testimony of three witnesses: Dr. Bobby Stephensona clinical psychologist who evaluated Mrs. Aswell on two occasions; Reverend Don Wineingera minister the Aswells were ordered to report to for marriage counseling; and Doris Henrythe Department of Health and Human Resources employee most recently assigned to the case. In his reasons for judgment the trial judge made the following evaluation of the testimony of these three witnesses:
"In analyzing the individual areas of evidence presented by the State, the psychiatrist (sic) Dr. Bobby Stephenson testified that he had last examined Mrs. [Aswell] in the early part of 1982, he had examined the children in the early part of 1982, and that he had concluded that Mrs. [Aswell] was a little bit better than she had been at his previous examination. He of course was not willing to state and did not state that she was in any way sufficient. In fact he went on to say that he didn't think that the change was sufficient to support much hope for reformation by her. He indicated that the incident in August [the suicide attempt] influenced his opinion in the negative. Testifying for the State or I should say for the defense was Reverend Don Wineinger who had made personal counseling and observations of both Mrs. [Aswell] and her husband and had noted a dramatic change in the early part of 1983. A dramatic positive change I would say. And the Court has also considered the totality of the testimony of Mrs. Henry in arriving at a decision. I think, suffice that to say, that Mrs. Henry could not point to any specific fact during her period of supervising Mrs. [Aswell's] case that would justify a conclusion that she had no hope of rehabilitating herself."
The record supports the trial court's evaluation of the witnesses' testimony.
Dr. Stephenson last evaluated Mrs. Aswell in April, 1982, some 14 months before the instant case was tried. The State did not seek to have an updated psychological evaluation made. Mrs. Aswell personally contacted Dr. Stephenson about doing another evaluation a few months before this case was tried. He refused to conduct the evaluation and told Mrs. Aswell it would be in her best interest to seek a fresh point of view. Dr. Stephenson's primary reason for giving Mrs. Aswell little hope of reformation is that in his opinion she suffers from an anti-social personality. It has been his experience that persons with that problem seldom change. The improvement he noted at the second evaluation was Mrs. Aswell showed more self-control.
Doris Henry worked with the Aswells from February through August, 1982. When her testimony is compared with that of Wayne Conrad, a DHHR employee who worked with Mrs. Aswell from September *104 through December, 1978, it appears that Mrs. Aswell has made some improvement. When Conrad worked with Mrs. Aswell she was unmarried and frequented bars. She was often gone all night and occasionally left the children with persons with whom she was not well acquainted.[4] On other occasions Mrs. Aswell allowed her latest paramour to stay in the same house with her and the children. There were allegations she would have sex in front of the children. Conrad testified that every time he visited Mrs. Aswell her home was dirty and the children were dirty and unkempt.
At the time Mrs. Henry was assigned to the case, Mrs. Aswell had been married to her present husband about two years and was at least attempting to make a go of the marriage. Mr. Aswell had been employed at the same job for a number of years and earned $190 a week. The Aswells made an effort to attend most of the activities ordered by the court although they were unhappy about having to attend many of them. Mrs. Henry always found the house clean and Mrs. Aswell responsive to what was asked of her. She stated that Mr. and Mrs. Aswell made plans for the permitted visits with the children and that the little girls anticipated and enjoyed most of their visits.
The State argues that Reverent Wineinger is a well-intentioned, overly optimistic victim of Mrs. Aswell's manipulation. We note that initially the Aswell's attended marriage counseling, not by their own choosing but pursuant to a court order. DHHR chose Reverend Wineinger for them. After the court ordered counseling was discontinued the Aswells in September 1982 of their own choice sought and obtained additional counseling from Rev. Wineinger. Rev. Wineinger testified that Mr. and Mrs. Aswell made great improvement in their marriage relationship with each other commencing in January, 1983. He stated the quality of their relationship had improved so much by May, 1983 that he terminated further counseling as he considered it unnecessary. Rev. Wineinger's optimistic assessment of Mrs. Aswell is based in part on a religious conversion experience she related to him. The State points out the experience occurred approximately one month before trial and cites it as another example of Mrs. Aswell's manipulation. We are unprepared to say her religious experience was not sincere.
The State argues that the factors to be considered for determining when there is no reasonable expectation of reformation on the part of the parent include (1) the history of the parent's condition and treatment of the children; (2) the cause of the parent's condition and treatment of the children; and (3) the present functioning of the parent in light of intervention efforts. The State points out that in essence these are the factors relied upon in In Interest of Boudreaux, 427 So.2d 891 (La.App. 1st Cir. 1983), writs denied, 432 So.2d 267 (La.1983) wherein the court affirmed a judgment terminating parental rights.
The State then argues that the life led by Mrs. Aswell for many years prior to the June, 1982 hearing, most of which was reviewed in our opinion affirming the June, 1982 judgment, together with the August, 1982 suicide attempt, constitute proof by clear and convincing evidence that there is no reasonable expectation of reformation by Mrs. Aswell. The State contends the earlier life style of Mrs. Aswell when analyzed in connection with the factors considered by the Boudreaux court clearly established that the State has met its burden of proof and requires the termination of Mrs. Aswell's parental rights.
While all of these factors are important and the life style of Mrs. Aswell for many years prior to the 1982 hearing should be considered, there is no error in the trial judge's reliance upon some evidence of improvement in 1982, together with substantial evidence of improvement in the six months immediately preceding the termination hearing, as evidencing reasonable expectation of reformation.
*105 The State argues Mrs. Aswell's attempted suicide in August, 1982 establishes that Mrs. Aswell has not reformed and shows no reasonable expectation of reformation.
Mrs. Aswell stated that at the time she shot herself she was very depressed because of the recent judgment maintaining the custody of her children in the DHHR, terminating her visitation with them and ordering a proceeding to terminate her parental rights. These circumstances would depress even the most stable mother. She stated that this depression combined with the taking of the prescription drugs Valium and diet pills precipitated her action.
While Mrs. Aswell's attempted suicide reflects that she remained unstable in August, 1982, this does not establish that there was no reasonable expectation for her reformation in June, 1983 when the termination hearing was held.
There is substantial evidence in the record which supports the trial court's finding that the State had not carried its burden of proving there is no reasonable expectation of Mrs. Aswell's reformation by clear and convincing evidence. The trial judge was not clearly wrong and his findings should not be disturbed on appeal. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Finally, the State argues the termination should be granted because it is in the best interest of the children to free them for adoption instead of leaving them in the limbo of foster care. We do not consider the argument because the law requires the State to prove each and every element of R.S. 13:1601 D by clear and convincing evidence. The State has failed to prove the requirement that there is no reasonable expectation of the parent's reformation.
For the foregoing reasons, the judgment of the trial court is AFFIRMED.
NOTES
[1] An attorney appointed to protect the rights of the children participated in the hearing in compliance with R.S. 13:1602 C.
[2] The Ouachita Parish District Attorney appointed a DHHR attorney from New Orleans to try the case.
[3] 13:1603 A: A. Whenever the court of proper jurisdiction finds that the allegations of Subsection... D ... are proven true by the evidentiary standards set forth in this Section, it may order the termination of parental rights of the parent or parents against whom the allegations are proven.... Under Subsection D of R.S. 13:1601, Paragraphs (1), (2), (3), and (4) must be proven by clear and convincing evidence.
[4] At this time the children were in Mrs. Aswell's custody.