503 So.2d 717 (1987)
STATE in the Interest of Christopher AUGUST.
No. 86-321.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
James E. Burks, Lake Charles, for defendant-appellant.
*718 Richard Ieyoub and Ronnie Rossito, Lake Charles, for plaintiff-appellee.
Raggio, Cappel, Chozen & Berniard, Stephen Berniard, Lake Charles, for defendant-appellee.
Before DOUCET and YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
The sole issue presented by this appeal is whether or not the trial court erred in adjudicating a child in need of care.
Sheila Beaugh Fontenot (hereinafter Sheila), mother of Christopher August (hereinafter Christopher), appeals a judgment awarding custody of her minor child to the State. Need of care proceedings were instituted on behalf of Christopher following the mysterious death of his brother, Calvin August, Jr. The court found Christopher to be in need of care and ordered psychiatric evaluations of Sheila and her husband, Paul Fontenot (hereinafter Paul). At the dispositional hearing, the court maintained custody of Christopher in the Department of Health and Human Resources and ordered the Fontenots to attend counseling. Sheila Fontenot appeals the judgment of the trial court.

FACTS
On November 12, 1985, the Department of Health and Human Resources (hereinafter DHHR) received a report that Calvin August, Jr., born February 2, 1984, died under suspicious circumstances. When Calvin's body was viewed at the morgue, observers discovered a bruise on the child's right cheek and a laceration on his right eyelid. An autopsy was conducted by a pathologist, who discovered a bruise on top of the child's head, bruising on the inside of the child's upper and lower lips, and a small amount of hemorrhaging and infection in the lungs. The pathologist attributed bronchiolitis or bronchial pneumonia as possible causes of death, but stated that it would have been most unusual for such a recent infection to have caused Calvin's death. He also stated that the probability of sudden infant death syndrome (SIDS) occurring in a child of Calvin's age bracket was quite low.
Due to the suspicious nature of Calvin's death, the DHHR instituted proceedings to remove custody of Calvin's brother, Christopher, born February 27, 1985, from the Fontenots pending completion of the investigation. A need of care hearing was held on January 3, 1986. At the hearing, several witnesses testified to observing prolonged beatings lasting as long as 30 minutes administered to the children by Paul Fontenot. A neighbor of the Fontenots stated that she heard a child being beaten the night before Calvin died. Neighbors also testified that there were occasions when the children were left at home alone. Witnesses additionally stated that the children appeared dirty and looked as if they had not been fed properly.
On viewing Calvin's body, the mortician stated that the child appeared to have been ill for some time and that he had apparently been shaken frequently during his lifetime. The emergency room physician stated that when Calvin was brought in, he appeared unclean and there was a strange odor on his breath as if he had been given medication.
Several physicians attested to the mental instability of Paul and Sheila Fontenot. Dr. Charles Downing, a psychologist who examined the Fontenots individually prior to the initial hearing, testified that Sheila Fontenot was experiencing a severe depressive neurosis or dysthemic disorder and he did not feel that she could be a proper caretaker for an infant. Dr. Downing also determined that Paul Fontenot was schizophrenic and had a history of hallucinatory material. He concluded that Paul Fontenot had explosive tendencies and therefore was not an appropriate caretaker for a young child. Dr. Downing stated that both parties needed psychiatric help.
*719 At the dispositional hearing on January 31, 1986, Dr. Giles Morin testified that people with mental disorders such as the Fontenots have generally do not make good parents. Upon examination of Sheila Fontenot, Dr. Morin determined that she had dysthemic disorder and a paranoid personality. He opined that people with those types of disorders do not have very many coping skills and collapse at the slightest hint of pressure and trauma. Dr. Morin examined Paul Fontenot and concluded that he was a paranoid schizophrenic. Dr. Morin stated that schizophrenic reaction was a very serious illness, and that persons with this disorder statistically experience great difficulty in parenting because of their own problems. Dr. Howard Rigg, who was the emergency room physician on duty the night Calvin was brought in, testified that he was suspicious as to the cause of Calvin's death and thought that Paul might have been involved based on his past behavior.
After hearing the evidence, the trial court adjudged Christopher to be in need of care. The trial judge based his decision on the suspicious circumstances surrounding Calvin's death and the possibility that Christopher might be subjected to a similar type of treatment. At the dispositional hearing, the court maintained custody of the child in the DHHR and ordered counseling for the Fontenots.
Sheila Fontenot appeals the judgment of the trial court, asserting that the trial judge erred in adjudicating Christopher an abused and neglected child in light of the lack of clear and convincing evidence. Finding no manifest error, we affirm.

LAW
Under the provisions of LSA-C.J.P. art. 13(14), "child in need of care" means a child:
"(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child;
(b) Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, counseling or education, or as a result of the parent's neglect or imposition of cruel punishment; or
(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason."
"Abuse" and "neglect" are defined under the provisions of LSA-R.S. 14:403 as follows:
"`Abuse' is the infliction, by a person responsible for the child's care, of physical or mental injury or the causing of the deterioration of a child including but not limited to such means as sexual abuse, sexual exploitation, or the exploitation or overwork of a child to such an extent that his health or moral or emotional well-being is endangered.
`Neglect' is the failure, by a person responsible for the child's care, to provide the proper or necessary support, education as required by law, or medical, surgical, or any other care necessary for his well-being. No child who is being provided treatment in accordance with a recognized religious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused."
In the need of care petition, the State must prove the allegations of the petition by a preponderance of evidence. C.J.P. Art. 73. The State bears the burden of proof by clear and convincing evidence to justify the harsh judgment of neglect and the change of a child's custody. State In Interest of Thompson, 372 So.2d 1255 (La.App. 3 Cir.1979). Those resisting the parent's demand for custody must show that the parent is disqualified or unfit to have custody, or is incapable of caring for the child, or that it is detrimental to the child's welfare to place him or her under *720 the care of the parent. State In Interest of DEM, 441 So.2d 514 (La.App. 2 Cir.1983).
In this case, both of the physicians who examined the Fontenots concluded that Sheila and Paul Fontenot had inadequate parenting skills and were mentally incapable of caring for a young child. Representatives from the Office of Human Development testified that the agency recommended Christopher's removal from the Fontenots' care based on their mental health histories. Witnesses testified to incidents in which Sheila and Paul Fontenot threw temper tantrums and exhibited extreme anger toward the children and others.
The presumption in favor of a parent's right to custody as against the State is, on a direct contrary factual showing, eroded if those facts disclose that the child's best interest requires the protection of the State. State In Interest of Black, 310 So.2d 174 (La.App. 4 Cir.1975), writ den., 313 So.2d 829 (La.1975). In State In Interest of Quilter, 424 So.2d 394 (La.App. 2 Cir.1982), aff'd, 445 So.2d 101 (La.App. 2 Cir.1984), the court determined that a parent may be deprived of the custody of his child if he is mentally incapable of caring for him. As in this case, a psychologist evaluated the mother and determined that she was subject to highly emotional and angry behavior. The testimony of other parties verified incidents which provided further support for the doctor's evaluation. The court in Quilter determined that the doctor's testimony and opinions were entitled to the considerable weight they were accorded by the trial judge and that the judge properly placed custody of the children in the department.
In his reasons for judgment, the trial judge stated that he based his opinion on the testimony of numerous witnesses and the suspicious circumstances under which Calvin died. The trial court is in a much better position to determine the credibility of witnesses and the evidence they present, and absent some manifest error, the reviewing court must follow the trial court's determination. Moore v. Moore, 479 So.2d 1040 (La.App. 3 Cir.1985).
As we find that the trial judge was not manifestly in error in reaching his decision, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.