554 So.2d 244 (1989)
STATE in the Interest of Christopher AUGUST, Plaintiff-Appellee,
v.
Sheila Beaugh FONTENOT, Mother of Child, Christopher Dale August, Defendant-Appellant.
No. 88-904.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
Ronnie Rossito, Asst. Dist. Atty., Lake Charles, for appellee.
Raggio, Cappel, Chozen & Berniard, Stephen Berniard, Lake Charles, for appellee-D.H.H.R.
Charlotte Bushnell, Lake Charles, for appellant.
Before GUIDRY and KNOLL, JJ., and ROBERTS[*], J. Pro Tem.
KNOLL, Judge.
Sheila Beaugh Fontenot, mother of Christopher August, born February 27, 1985, appeals the judgment of the juvenile court terminating her parental rights. Sheila contends the State failed to prove that Christopher is a child in need of care as defined in LSA-R.S. 13:1601(B) and the State failed to prove that Christopher is an abused child or neglected child as defined in LSA-R.S. 13:1601(D).

FACTS
On October 13, 1985, the State was granted an instanter order of custody of Christopher from Sheila and her husband, Paul Fontenot, stepfather of Christopher. The circumstances leading up to the State intervention are discussed at length in our previous opinion in State in Interest of August, 503 So.2d 717 (La.App. 3rd Cir. 1987). Briefly stated, on November 12, 1985, the Department of Health and Human *245 Resources (DHHR) received a report that Calvin August, Jr., born February 2, 1984, died under suspicious circumstances. An autopsy of Calvin revealed numerous bruises and a small amount of hemorrhaging and infection in the lungs. This evidence and statements by neighbors that the children frequently received extended beatings for as long as 30 minutes prompted DHHR officials to intervene and remove Christopher. Christopher has remained in the custody of the State since the initial adjudication as a child in need of care, November of 1985.
On March 31, 1988, the State filed its petition to terminate the parental rights of Sheila and the father, Calvin August, based on LSA-R.S. 13:1601(B) & (D). Calvin did not appear at trial. The juvenile court terminated the parental rights of Sheila and Calvin pursuant to LSA-R.S. 13:1601(B) & (D).
Since the adjudication of Christopher as a child in need of care (LSA-CJP Art. 13[14]), little has changed. Sheila's diagnosis of dysthemic disorder and paranoid personality remains and she consistently misses the court ordered counseling sessions and the family team conferences.
Dr. Charles Downing, Sheila's clinical psychologist, testified that although he has not examined her since 1985, Sheila's condition is chronic and is a lifelong illness. He explained that thought disorders like Sheila's are not curable but can be treated with medication. Dr. Downing further testified that Christopher would have a better chance to become a productive person if he was adopted.
Dr. Giles R. Morin, Sheila's psychiatrist, testified that it is unlikely her mental condition or her parenting skills will improve. He stated that Sheila's mental condition makes her a marginal parent and that it would be in the best interest of Christopher for adoptive parents to raise him.
Phyllis Bennett, psychological associate at Lake Charles Mental Health Center, testified that treatment sessions with Sheila in 1986 and 1987 produced no permanent benefits. Mrs. Bennett, an expert in psychological therapy, agrees with Dr. Downing's diagnosis of dysthemic disorder and opines that the State should not return Christopher to Sheila.
There was considerable testimony regarding Paul's mental condition. Although Paul is not a natural parent to Christopher, he is part of Sheila's home environment since he is married to her. Paul has schizophrenic reaction, paranoid type and occasionally hallucinates. In addition, Paul's violent tendencies pose an increased risk of injury to Christopher and his parenting skills are marginal. His condition will last his entire life and stress can trigger psychotic episodes. Dr. Morin opines that it would be in the best interest of Christopher for others to raise him.
The record shows that DHHR conducts family team conferences in an attempt to reunite the child with the parent(s). These conferences are meetings conducted with the parent(s) and child by the State officials to identify problems and establish a strategy to eliminate the problems with the ultimate goal of reuniting the child with the parent(s). These conferences are held every six months. As of the date of this hearing, Sheila has attended only four of seven conferences.
As part of a family team conference, Sheila agreed to a visitation schedule. Out of 34 scheduled visitation periods with Christopher, Sheila attended only 11. (The record indicates these visitations were scheduled during the year 1987.) Joanna Gatlin, the family case worker, testified that if a parent needed transportation, the agency would provide it free of charge. She also testified that Sheila refused transportation on more than one occasion.
Lisa Baller, a foster care worker for the Calcasieu Office of Community Services, testified that during the few visits Sheila attended, there was no interaction between Sheila and Christopher. She also stated that Christopher has not exhibited any signs of separation anxiety and never asks about his mother. In her opinion, Christopher is a likely candidate for adoption.
Sheila argues that the State failed to prove that Christopher is a child in need of *246 care as defined in LSA-R.S. 13:1600(7) and as a result, the juvenile court was manifestly erroneous in terminating her parental rights.
In the case sub judice, the State proceeded under LSA-R.S. 13:1601(B) & (D), which provides:
"The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.
* * * * * *
B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.
* * * * * *
D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents."
To terminate parental rights, the elements of subsection B or D must be proven by clear and convincing evidence. LSA-R.S. 13:1603(A). It must also be proven that the best interest of Christopher requires termination of Sheila's parental rights. LSA-R.S. 13:1602(D).
A careful examination of the record reveals that a child in need of care judgment was rendered by the juvenile court on January 6, 1986. This judgment was later affirmed by this court on March 4, 1987. August, supra.
The evidence reveals that Sheila and her husband, Paul, have lifelong psychological problems which severely limit their parenting skills. One child has already died under suspicious circumstances while in Sheila and Paul's care. All of the expert witnesses agreed that both Sheila and Paul are marginal as parents and their respective mental conditions will not improve. Moreover, Sheila has exhibited lack of interest in Christopher by missing family team conferences and visitations. The record offers no evidence that Sheila is likely to reform.
Given the circumstances of this case wherein one child has died under suspicious circumstances while in Sheila's care, Sheila and her husband, Paul, have grave lifelong psychological problems, and, Sheila's lack of interest in Christopher convinces us that Sheila is unfit to raise Christopher, and, it would be in Christopher's best interest if Sheila's parental rights were terminated.
Accordingly, we cannot say that the juvenile court's judgment terminating Sheila's parental rights was manifestly erroneous.
For the foregoing reasons, the judgment of the juvenile court is affirmed.
AFFIRMED.
NOTES
[*] Judge Charles Wm. Roberts, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.