KING, Judge.
The sole issue presented by this appeal is whether the trial court erred in adjudicating children in need of care and ordering that they remain in the custody of the State of Louisiana, Department of Health and Human Resources.
The State of Louisiana, in the interest of Marcus West, age 11; Travis West, age 9; and Edna LeAnn West,[1] age 5, filed a petition alleging that these children were neglected by their mother, Mary E. West (hereinafter defendant). Following a hearing, the trial court adjudicated the three children in need of care and then, at a dispositional hearing, found that the best interest of the children would be served if they remained in the custody of the State of Louisiana, Department of Health and Human Resources (hereinafter DHHR). A formal judgment was signed on December 18, 1988. Defendant timely appeals this judgment. Finding the evidence insufficient to support the adjudication, we reverse.
FACTS
Defendant and her three children live in Colfax, Louisiana, with defendant’s mother, Edna Mae Frisco. Defendant is unemployed and the household receives Social Security income, food stamps, and a small A.F.D.C. check.
On September 20, 1988, the child, Travis West, went to the Grant Parish Child Protection Agency to talk about his mother and to get some help for his family. At the Agency, Joanna Jewell, a child protection investigator, interviewed Travis. Ms. Jewell, who testified at the disposition hearing, stated that Travis told her that his mother had been gone for about a week and that he was staying with his grandmother who was sick. He stated that his mother had gone to live with her boyfriend, Robert Frazier, and would come home only to pick up the food stamps and the Social Security check. Travis stated that since his mother left, the children only ate well at school, and that at home the children had been eating only spaghetti, sometimes with nothing on it. According to Ms. Jewell’s testimony, Travis also told her that his mother was on drugs and she needed help.
*82 After talking to Travis, Ms. Jewell went to the defendant’s home. Defendant was not there. Edna Mae Frisco, defendant’s mother, let Ms. Jewell in the home. Ms. Jewell inspected the home and found it suitable and clean. However, she found no food in the refrigerator and only a small pack of salt meat in the freezer. While in the home, Ms. Jewell observed that defendant’s mother was cooking a “hoe cake”, which is flour bread, on the stove which she stated she planned to serve to the children with syrup. After Ms. Jewell left, she interviewed the other two children at school. Later, Ms. Jewell and her supervisor purchased approximately twenty dollars worth of groceries and brought them to the defendant’s home.
Based on the above information, including the interview with the child, Marcus West, the court issued an Instanter Order on September 26, 1988 ordering the three children placed in the custody of the DHHR. A 72 hour continued custody hearing was held on September 27, 1988. Defendant did not appear at the continued custody hearing and the custody of the three children was continued in the DHHR. An adjudicatory and dispositional hearing was held on November 15, 1988.
Peggy Qualls, a Social Service Specialist for the Office of Community Services, testified at this hearing. She was assigned to work with defendant and her children after the children were removed from their home. Ms. Qualls testified that her goal was to return the children to their home and in furtherance of this goal, she drew up two very informal contracts. The first contract specified what her office would do to provide for the needs of the children while they were in the custody of the DHHR. The second contract listed what her office identified as defendant’s problem areas and what defendant was required to do in order to have her children returned to their home. Defendant willingly signed the contract which concerned what the DHHR would do for her children but refused to sign the contract with the recommendations that pertained to herself. The contract concerning defendant contained the following conditions:
(1) To maintain and stay at one permanent residence,
(2) To attend mental health on a regular basis with possible sessions with the children.
(3) To independently enroll and complete a substance abuse course and provide verification to the agency.
(4) To meet with the worker once a month.
(5) To visit the children once each month.
(6) To improve management of the food stamps for the household.
Defendant refused to sign this contract and told Ms. Qualls that she did not feel that she needed to attend a substance abuse clinic. Defendant adamantly denies having a drug or alcohol problem and felt that signing the contract would be an admission that she was a substance abuser. The other conditions in the contract were agreeable to defendant. The evidence showed that defendant had maintained her scheduled visitation with her children, and was attending a mental health clinic.
When the court asked Ms. Qualls her opinion concerning the children, she recommended that the children remain in the custody of the DHHR until defendant was willing to cooperate with them and attend the substance abuse clinic. Ms. Qualls stated that if defendant would attend the substance abuse clinic, she would be willing to allow the children to return to defendant’s home.
The State also called defendant’s mother and two of the children, Marcus West and Travis West, to the stand at the hearing. All three of these witnesses denied any drug use by defendant. Marcus West, who stated that he and his brother, Travis, talked about going to the Child Protection Agency before Travis actually went, stated that the only reason they wanted to go to the Agency was to get their “mama to break up with Robert Frazier.” Travis West, when called to the stand, also stated that he went to the Agency because his mother was going with a man named Robert. Marcus, who is 11 years old, testified *83 that he weighs 130 pounds. Travis, who is 9 years old, testified that he thought he weighed over 100 pounds. Both Travis and Marcus testified that they love their mother and that they want to move back home with her.
When defendant testified at the hearing, she admitted that at the time of the complaint she had been away from home for approximately ten days and that during this time, her house was low on food. She stated that the van which picks her up for her mental health clinic appointments picked her up on September 15, 1988 and took her to her appointment in Alexandria, Louisiana. Following her appointment at the clinic, she stayed in Alexandria at her sister’s house to take care of personal business. Defendant had been involved in an automobile accident and stated that she was looking for an attorney to represent her in a personal injury lawsuit. She remained in Alexandria because she could not afford daily transportation between Colfax and Alexandria each day and her sister’s car was broken. When asked about her relationship with Robert Frazier, she stated that she did date Mr. Frazier for a while but had terminated their relationship. She stated that she loves her children very much and wants them to come back home.
Four witnesses were called on behalf of defendant. Three of the witnesses were the defendant’s neighbors and one was defendant’s aunt. The substance of these witnesses’ testimony was that they see defendant’s children often, that they are clean, well taken care of, have plenty to eat and they have seen no drugs in defendant’s house. One witness found it very odd that there were allegations of lack of food in defendant’s house. He stated, “Something gotta be wrong some kind of way. I done seen many funny things, but this is the funnest thing I ever seen. Say them kids ain’t had nothing to eat, you could look at ’em and tell that they been fed.”
After hearing the evidence, the trial court ordered that the custody of the three West children remain with the DHHR. Defendant contends that the State failed to prove that the children were in need of care to such an extent that they should be removed from the custody of their mother.
LAW
A “child in need of care” is defined, in part, as one:
“Whose physical, mental, or emotional condition is substantially threatened or impaired as a result of the refusal or neglect by his parent to supply the child with necessary food, clothing, shelter, treatment either by medical care or in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success, counseling, or education, or as a result of the parent’s neglect or imposition of cruel punishment; however, nothing herein shall prohibit the court from ordering medical services for the child when there is substantial risk of harm to the child’s health or welfare; ...” La.C.J.P. Art. 13(14)(b).
“Neglect” is defined as:
“[T]he failure, by a person responsible for the child’s care, to provide the proper or necessary support, education as required by law, or medical, surgical, or any other care necessary for his well-being. No child who is being provided treatment in accordance with a recognized réligious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused.” La.R.S. 14:408(B)(4).
In its petition, the State alleges that appellant has neglected her children. The State bears the burden of proving their allegations by a preponderance of the evidence. La.CJ.P. Art. 73. Those resisting a parent’s demand for custody must show that the parent is disqualified or unfit to have custody, or is incapable of caring for the child, or that it is detrimental to the child’s welfare to place him or her under the care of the parent. State In Interest of August, 503 So.2d 717 (La.App. 3 Cir.1987). The court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal. La.C.J.P. Art. 86(A).
In the instant case, the only facts that the State unquestionably proved were (1) that defendant was away from her home *84 for approximately ten days, and (2) that on one occasion, September 20, 1988, defendant’s home was low on food. Although Ms. Jewell testified that Travis West told her that his mother was on drugs, when Travis testified at the hearing, he denied making that statement to Ms. Jewell. There is, in fact, no other testimony which corroborates the State’s allegation that defendant abused drugs. To the contrary, every other witness that was asked, including defendant, denied such drug use by defendant.
While it is clear that defendant had been away from her home for ten days, we cannot say that this rises to the level of neglect on the part of defendant under the circumstances.
Defendant explained that she was unable to commute back and forth on a daily basis from Colfax to Alexandria because of lack of funds. The record further reveals that when defendant left her home, she did not leave her children alone and unattended. Defendant’s mother, who lives with them, took care of the children. Defendant’s mother is in her sixties and, according to Ms. Qualls, “she appears to be physically healtby.” A doctor’s report which was introduced into evidence at the hearing indicates that defendant’s mother suffers some impairment from hypertension and arthritis but that she is perfectly capable of performing daily living activities and taking care of the West children. This is evidenced by the fact that she was taking care of the children and cooking for them on the day Ms. Jewell visited the house.
Defendant’s mother stated that the children . had not missed any meals. The record reflects that this is a poor family which is on food stamps and Social Security income. Extravagant meals are not commonplace. However, all three of the children are healthy and the testimony and evidence indicates that they do not appear to be malnourished.
Defendant expressed her love for her children and stated that she wants them back home, She was willing to work with Ms. Qualls except for the substance abuse clinic provision in the contract for their return. She recognizes that she may have some problems and attends a mental health clinic regularly.
While this court is conscious of the juvenile court’s great discretion in matters involving the custody of children and that such findings should not be overturned on appeal absent a clear showing of abuse of discretion, State in Interest of Two Minor Children, 499 So.2d 697 (La.App. 3 Cir.1986), we nevertheless cannot say that the best interest of these children would be served by removing them from their mother’s custody. The State has not proved by a preponderance of the evidence that these children are in need of care under La.C.J.P. Art. 13(14)(b). The trial court’s adjudication is manifestly in error and clearly wrong. For these reasons, the judgment of the trial court is reversed, vacated, and set aside. The State of Louisiana, Department of Health and Human Resources, is ordered to immediately return the minor children, Marcus West, Travis West, and Edna LeAnn West, to the custody of their mother, Mary E. West. All costs of the trial court and appellate court are to be paid by the State of Louisiana, Department of Health and Human Resources.
REVERSED.

. The petition incorrectly identifies the youngest child as Edma Mae West. Her correct name is Edna LeAnn West.