ARMSTRONG, Judge.
We find that reasonable grounds did exist for the trial court’s April 29, 1991 ruling, placing Brandon in non-relative foster care with the State until after the parents develop a stable home.
On April 24, 1991, the State applied for an order to secure the custody of Derrick Young (seven years old), Jessie Murray, Jr. (three years old), and Brandon Murray (twenty-three days old) from their parents Jessie and Loretta Murray. The affidavit in support of the order stated that Derrick Young had been beaten by his father on April 23 and that Mr. Murray had been arrested that same night; that on February 1, 1991, Jessie had been severely beaten by his mother; and that neither Mr. or Mrs. Murray felt that they had done anything wrong. Additionally, the affidavit stated that Brandon was at risk due to the abusiveness of Mr. and Mrs. Murray. The affidavit noted that Mr. Murray had been arrested in May, 1990 for sexually molesting his five year-old daughter who was *1348 currently in foster care. The juvenile court judge signed the order giving the Office of Community Services (OCS) temporary custody of the three boys, and a hearing was set for April 26, 1991.
The hearing was continued until April 29, at which time Yvonne Webster of the OCS testified. Ms. Webster testified that on April 23 a call had come in regarding physical abuse to Derrick by Mr. Murray. Because Mr. Murray had been arrested, the worker felt no need to remove the child from the home. Ms. Webster reviewed the case on April 24 and discovered that Mrs. Murray had severely beaten Jessie six weeks earlier. Based on this history, Ms. Webster sought to have the children removed. She testified that Brandon was removed because of the abusive way the other two children had been treated; thus it was feared Brandon was at risk even though there was no evidence Brandon had been abused. Ms. Webster also testified that Mr. Murray’s relatives had called about taking the children and that placement with relatives who lived in Mansura had to be studied before the children could be sent there. The judge ordered Ms. Webster to conduct a home study of the paternal grandmother's home in Mansura (Avo-yelles Parish) to see if Brandon could be placed there. Derrick and Jessie were kept in foster care.
On May 7, a second hearing was held and Ms. Webster testified that she contacted the authorities in Avoyelles Parish who conducted the home study of Mr. Murray’s mother. The report of the worker indicated that the grandmother’s house was neat and had adequate room for the child. However, the grandmother has no income of her own and relied on her children for financial support. The worker recommended against placement at the grandmother’s because she and other relatives were very supportive of Mr. Murray and felt that he had not abused the children. Also, the grandmother lived in a rural area with a lot of relatives around and the worker felt that, because of this, any abuse would go unreported. Ms. Webster stated that abuse of the infant was anticipated because of past history.
The judge questioned Mr. and Mrs. Murray informally and Mr. Murray informed the judge that they had been ordered to move from their apartment on the Navy base by May 29, 1991. Mr. Murray was in the Navy and a court martial proceeding was pending against him. Mrs. Murray stated that they would be moving to a new apartment on May 15, 1991. She also said that she was unemployed but was in school at Delta Junior College and she planned to graduate at the end of May. She said she had no concrete plans for the care of Brandon while she was still in school but care could be arranged.
The judge ruled that Brandon should be kept in foster care until the Murrays got a stable home.
In State In Interest Of August, 503 So.2d 717 (La.App. 3d Cir.1987), the trial court adjudged a minor in need of care where its sibling had died under suspicious circumstances and a possibility existed that it might be subjected to similar type of treatment. The Third Circuit affirmed the trial court’s ruling holding that “[t]he presumption in favor of a parent’s right to custody as against the State is, on a direct contrary factual showing, eroded if those facts disclose that the child’s best interest requires the protection of the State.”
Like August, the instant case is one where the best interest of the child will be served by placing him in the State’s custody until further showing. The evidence reveals that neither parent admitted or acknowledged abuse of Brandon’s siblings who are all presently in the custody of the State. Further, the family is being evicted from its home and a new home has not yet been secured. Nor did the family have concrete plans for Brandon’s daycare upon his return to the home since his mother is currently a student at Delta Junior College.
The trial court’s finding that there is no suitable relative foster care available is supported by the evidence. The OCS investigator recommended against placing the infant with his paternal grandmother because she has no independent source of income and lives in a rural area, isolated *1349 from anyone but family members. It is the attitude of the family that Brandon’s siblings have not been abused. The OCS investigator concluded that if Brandon were abused or neglected it could go unreported.
Accordingly, this writ application is denied.