J^GONZALES, J.
This is an appeal from a trial court judgment that found that the State of Louisiana, Department of Social Services, Office of Community Services (OCS), failed to carry its burden of proof to terminate parental rights under La. Ch.C. art. 1015(5).
P.R., N.R.’s mother, called OCS on July 6, 1998, to report that her daughter was pregnant and needed services from the agency. N.R. gave birth to C.R. at Lake-view Regional Medical Center on July 15, 1998. According to the affidavit in support of the order to take the child into State custody, N.R. was unable to properly care for C.R. due to her mental limitations, and, *86 further, N.R. did not have the basic necessities to care for her newborn child. P.R., with whom N.R. was residing, was also mentally limited, and the child would be at an unacceptable risk of harm if left with N.R. C.R. was taken into State custody two days after her birth, was found to be a child in need of care, and was placed with foster parents.
At the time of C.R.’s birth, N.R. was seventeen years old. N.R. had been in foster care for a considerable period of time herself, due to sexual abuse perpetrated by her father and general neglect by her father and P.R.
In July of 1998, the State’s case plan had a goal of reunifying C.R. with N.R. The plan included N.R. having weekly visits with C.R. at the OCS office. As of January 8, 1999, the case plan assessment showed that N.R. had complied with the case plan, but more intense parenting training was needed. N.R. was referred to another program, Pathways, for parenting instruction in her home with C.R. present. N.R. was also referred to the Office of Citizens with Developmental Disabilities (OCDD) by OCS. According to the case plan, N.R. needed to work towards independent living, work towards a high school diploma, and learn cooking and cleaning skills.
A twelve-month administrative review was held on June 29, 1999, and a report was submitted to the trial judge on June 30, 1999, recommending that the goal of the case plan be changed to adoption, based upon P.R. and N.R.’s continued inability to parent and provide a safe environment for C.R.
hOn September 22, 1999, OCS filed a certification for adoption and a petition for termination of parental rights, pursuant to La. Ch.C. art. 1004(D). OCS asserted that C.R. had been in the custody of OCS for over a year and was living with O.W. and J.W., her foster parents. OCS asserted that there were four alleged biological fathers of C.R., none of whom had taken any action to acknowledge paternity.[2] Further, OCS alleged, that, among other things, the State had provided mental health evaluations, parenting classes, in-home based services, individual counseling, SSI assistance, and regular visitation to N.R., to no avail. A trial on the merits was held on February 16, 2000.
After completion of the trial, the court took the matter under advisement. Thereafter, on March 1, 2000, the trial court ruled, finding that the State did not carry its burden of proof with respect to “no substantial compliance with the case plan” as required by La. Ch.C. art. 1015(5). The petition for termination of parental rights and certification of eligibility for adoption was dismissed, and, because C.R. had previously been adjudicated as a child in need of care, it was decreed that the custody of C.R. be maintained by the State.
OCS is appealing that judgment.[3] The State has two arguments on appeal: first, that the mother did not substantially comply with the case plan and, second, that because there is no reasonable expectation of significant improvement in N.R.’s mental deficiency in the near future, under La. Ch.C. art. 1036(C)(6) and (7), that fact alone is sufficient to prove lack of substantial compliance with the case plan.
First, we will address the State’s argument that the trial court erred in failing to find that N.R. failed to substantially comply with the case plan. Louisiana Children’s Code article 1015(5) provides the following ground for termination of parental rights:
*87 Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court |4order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
By stipulation, the State proved N.R. attended only three out of six parenting classes. The State also proved N.R. failed to attend some of the court approved scheduled visitations with the child, although transportation was provided to her, and that N.R. moved several times without prior notice to OCS.
However, the administrative review from June 29, 1999, showed that N.R. had complied with the case plan in the following ways: she had a psychological evaluation, as requested by OCS; she participated, along with her mother, in the Pathways Intervention; she and her mother participated in two five-hour visits with C.R.; she had attended visitation with C.R. once a week for the previous six months; she and P.R. maintained a home for the previous six months; she supported C.R’s placement with her foster parents; she made herself available for appointments with the agency; and she had maintained contact with the agency during that time period.
The evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parent’s failure to comply with all of the enumerated conditions specified in any one or more of the paragraphs set forth in Article 1015 as the basis for termination of parental rights under the circumstances. Also, the factual findings of the trial court in determining whether the requirements of Article 1015 have been satisfied will not be set aside in the absence of manifest error. State in the interest of BJ and MJ, 95-1915 (La.App. 1 Cir.4/4/96), 672 So.2d 342, 348, writ denied, 96-1036 (La.5/31/96), 674 So.2d 264.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The reviewing court must always keep in mind that if the trial court or jury’s |5findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, 617 So.2d at 883.
We cannot say that the trial court committed manifest error in finding that the State failed to prove a lack of substantial compliance with the case plan, based upon the record before us.
The State’s second argument is that, by amending the Children’s Code to add Article 1036(C)(6) and (7), the legislature recognizes that a parent is still not in substantial compliance with the case plan even if they physically attend all services, where there is a lack of substantial improvement in redressing the problems preventing reunification.
The record establishes that N.R.’s mental deficiency cannot be remedied. The court-appointed psychologist in this case, Dr. Rafael F. Salcedo, examined N.R. in August of 1998, shortly after C.R. was born. Dr. Salcedo concluded at that time that:
At any rate, I do believe that [N.R.’s] cognitive limitations are of such severity that they effectively preclude her from being able to adequately take care of, and provide the needs for, a child, i.e., in terms of material needs, emotional *88 needs, and need for psychological stimulation, educational enrichment, etc. Again, the reader is reminded that [N.R.] is very much a child herself, intellectually and emotionally, who is unable to function on her own.
Dr. Salcedo also testified extensively at the trial. He testified in pertinent part:
MRS. HERSHEY: Alright. And does it remain your opinion the [N.R.’s] cognitive limitations, no matter how old she gets or how she chronologically progresses, that she will never be capable of exercising parental responsibilities without exposing the child to a substantial risk of harm in the near future?
DR. SALCEDO: That’s correct.
Louisiana Children’s Code article 1036 provides in pertinent part, as follows:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
[[Image here]]
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
|fi(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
[[Image here]]
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
Although the State argues that the fact that there is no reasonable expectation of improvement in N.R.’s intellectual functioning in the future, in itself, establishes a lack of substantial compliance with the case plan, we find otherwise under recent case law. In State in the Interest of J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 814, the court stated:
We note that a finding of mental illness, standing alone, is insufficient grounds to warrant termination of L.A.’s parental rights. See LA. CHILD. CODE art. 1015, see also State in the Interest of August v. Fontenot, 554 So.2d 244 (La.App. 3 Cir.1989). Instead, the mental deficiency must be related to the parenting ability. That is, if the evidence proves clear and convincing evidence that the prognosis for L.A’s recovery in the near future is poor and there is no reasonable expectation of significant improvement in her condition in the near future, then termination is proper if it is in the best interests of the child and the additional grounds for termination have been met. LA. CHILD. CODE art. 1015(5). [Emphasis added.]
This ease makes it clear to us that N.R.’s mental deficiency and the lack of any reasonable expectation of significant improvement in her condition in the near future does not override the requirement that the additional grounds for termination under La. Ch.C. art. 1015(5) be met.
For the foregoing reasons, we AFFIRM the trial court decision that denied termination of the parental rights of N.R. Costs in the amount of $465.50 are assessed against the State.

. Three of the alleged fathers either stipulated to the allegations in the petition or executed voluntary surrenders prior to trial. Therefore, they were not present at the trial and are not a part of these appeal proceedings. A fourth alleged father underwent blood tests that proved he could not be C.R.’s father; therefore, he was not a party at the trial and is not a part of these proceedings.

. We note that no brief was filed by counsel for N.R. in this appeal.