372 So.2d 1255 (1979)
STATE of Louisiana In the Interest of Elizabeth Denise THOMPSON.
No. 7009.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1979.
*1256 Hawsey & Koepp, L. E. Hawsey, III, Baton Rouge, for plaintiff-appellant.
A. Bruce Rozas, Mamou, for defendant-appellee.
Before CULPEPPER, SWIFT and DOUCET, JJ.
SWIFT, Judge.
This is an appeal by Wanda Courville (divorced from Dennis Thompson and now married to John Young) from a judgment of the Juvenile Court for the City of Ville Platte apparently declaring her minor daughter, Elizabeth Denise Thompson, to be a neglected child within the purview of LSA-R.S. 13:1561 et seq. and granting custody of the child to her father, Dennis Thompson.
When Wanda Courville and Mr. Thompson were divorced on March 11, 1966, the mother was awarded permanent custody of Elizabeth and her three older sisters who were born of the marriage. In the latter part of 1976, while undergoing treatment for a gall bladder condition and unable to properly care for Elizabeth, Mrs. Young permitted her to live in Ville Platte with her father. On December 31, 1976, an ex parte decree was rendered by the Ville Platte City Court declaring Elizabeth to be a ward of the juvenile court and placing her in the custody of her father pending further orders. Eight months later, with the consent of both parents, Elizabeth returned to live with her mother in Baton Rouge.
Some time in the latter part of 1977 Mrs. Young developed a problem with drugs that had been prescribed by her physicians for an epileptic condition. On January 3, 1978, she was hospitalized for what was diagnosed as "Excessive Barbiturate Ingestion" and received treatment in the psychiatric ward until her discharge on January 7, 1978. Before being taken to the hospital by sheriff's deputies, Mrs. Young had them take Elizabeth to the apartment of her 18 year old sister, Paula, in Baton Rouge where she resided a few days until her father took her to his home in Ville Platte. Elizabeth was not happy there and frequently expressed her desire to return to live with her mother in Baton Rouge.
On January 19, 1978, Mr. Thompson and Elizabeth went to see the judge of the Ville Platte City Court. A petition was filed in *1257 that court the same day alleging that the "child had violated R.S. 13:1569(15) B, by habitually disobeying the reasonable and lawful demands of her parent, tutor or other custodian ..." and being "... ungovernable and beyond their control ... is in need of supervision." An ex parte hearing was held on January 19th at which Elizabeth entered a plea of guilty. The juvenile court found the child to be "... in need of supervision ..." and placed her on supervised probation for an indefinite period. Mrs. Young testified that she did not receive notice of either hearing and there are no returns in this record reflecting that she was duly notified thereof.
After several unsuccessful efforts to regain the physical custody of Elizabeth, Mrs. Young met her in front of the Thompson home in Ville Platte on January 26, 1978, and both returned to Baton Rouge. On March 3, 1978, while Elizabeth was still in Baton Rouge, this juvenile proceeding was instituted in the Ville Platte City Court seeking to have her declared to be a neglected child under R.S. 13:1561 et seq. Mrs. Young filed therein a petition for the annulment of the prior decrees of the juvenile court and damages.
Prior to the trial the appellant filed motions to recuse the city judge and the assistant district attorney who had present the neglect petition. She also filed declinatory and dilatory exceptions raising the objections of lack of jurisdiction over the subject matter, lack of jurisdiction over the person and vagueness. The motion to recuse the attorney was granted, but the similar motion in regard to the judge was denied without giving Mrs. Young an opportunity to present evidence in support thereof. The exceptions were then heard and overruled. An application for supervisory writs directed at the judge's ruling in regard to his recusation was denied by this court.
After trial on the merits the city judge concluded in his written reasons for judgment:
"While on the surface it may appear to the juvenile, Elizabeth Denise Thompson, that she is much more satisfied in the City of Baton Rouge, where she has friends and a great range of activities to participate in, this Court is concerned with her welfare. The Court, therefore, feels that the child would be better cared for in the home of her father, Mr. Dennis Thompson, in Ville Platte, Louisiana. Here, she can attend a Catholic School and participate in activities the children of her age of 14 years old can engage in. Accordingly, judgment is rendered this date granting custody to her father, Dennis Thompson, subject to reasonable visitation rights by the mother, Mrs. Wanda Young."
Neither the reasons for judgment nor the decree mention any finding that Elizabeth was a neglected child or in need of supervision. She, of course, was not charged with delinquency.
Although it is not essential that an express finding of the neglect, delinquency or need of supervision appear in the decree following a juvenile court hearing, the record must reflect that there was sufficient evidence for the trial judge to conclude that the child was in one of those classifications before he can render a valid judgment concerning its custody. State v. Robinson, 353 So.2d 442 (La.App. 3 Cir. 1977). In that case this court said:
"The law grants to juvenile courts exclusive original jurisdiction in proceedings concerning any child, domiciled in or found within the parish, who is determined to be neglected or delinquent or in need of supervision. If the evidence does not establish that the child is neglected, delinquent or in need of supervision, the juvenile court had no jurisdiction or authority to determine the custody of the child or to render any other judgment relating to custody. LAS-R.S. 13:1570 and 1580; In re Cruse, 203 So.2d 893 (La.App. 4 Cir. 1967); State in Interest of Purcell, 337 So.2d 637 (La.App. 3 Cir. 1976). (Emphasis added.)
Thus, a juvenile court is not the proper forum and neglect proceedings instituted therein cannot be used simply to change child custody from one parent to the other.
*1258 In a proceeding such as this the state bears the burden of proving neglect or the unfitness or inability of the parent to care for the child. In re State ex rel. Thaxton, 220 So.2d 184 (La.App. 1 Cir. 1969). And the evidence must be clear and convincing to justify the harsh judgment of neglect and a change of the child's custody. State in Interest of Gray, 353 So.2d 393 (La.App. 4 Cir. 1977).
A "neglected" child is defined in the following pertinent provisions of LSA-R.S. 13:1569(16) as one:
"a. who has been abandoned by his parents, tutor, or other custodian;
b. who is without proper parental care and control, or subsistence, education, medical or other care or control necessary for his well being because of the faults or habits of his parents, tutor, or other custodian or their neglect or refusal, when able to do so, to provide them; or
c. whose parents, tutor or other custodian are unable to discharge their responsibilities to and for the child because of their incarceration, hospitalization, or other physical or mental incapacity;"
In his written reasons for judgment the juvenile court judge stated that while living with her mother Elizabeth "was in a situation of turmoil and parental abuse, if not physical then on an emotional basis"; that there had been "serious family squabbles"; and that Mrs. Young had been "over medicating" for her various illnesses. Although there is evidence in the record to support his latter two findings, we do not agree with the first.
Elizabeth and her sister did testify that there were times when their mother was "not herself", which possibly could have been caused by what the trial judge described as "over medication". However, this happened infrequently and when the symptom was noticed in December, 1976, it was believed to be related to hepatitis which gave rise to the surgical removal of Mrs. Young's gall bladder.
The testimony of Mrs. Young's family physician, Dr. Charles T. Aswell, was that she suffers from occasional depression. She also has petit mal epilepsy for which the doctor has prescribed phenobarbital. He did not think, however, that the epilepsy will restrict Mrs. Young's activities in any significant way as long as she takes her medication. Dr. Aswell has treated this mother for at least 25 years and all of her children since birth. He was not greatly concerned about her "overdose" of drugs in January, 1978, and was not convinced this had happened before. The physician testified that he saw no reason why Mrs. Young cannot provide proper care for Elizabeth as she has done to his knowledge for all of her children in the past.
The preponderance of evidence is that Elizabeth is now living with Mr. and Mrs. Young and her sister, Paula, in the Young's comfortable, clean and well kept home in a middle class neighborhood in Baton Rouge. The Youngs were experiencing marital problems and were living apart in a trial separation at the end 1977 and when Mrs. Young was hospitalized in 1978. However, they have since resolved their problems and are living together again in apparent tranquility. Elizabeth is happy in that home and she is receiving proper care and supervision.
Our review of the evidence further discloses that Mrs. Young always exercised reasonable care and control over Elizabeth and properly supervised her activities and conduct except when she was ill. On those occasions she made arrangements for her daughter's safety and well being by placing her with her father and older sister. There was no evidence presented which indicated Elizabeth was absent from school for any unusual period or that at any time she failed to receive adequate food, clothing, shelter, medical care or attention. Nor was she ever abandoned by her mother.
The trial judge's determination in these cases, of course, is entitled to great weight and we are reluctant to disagree with him. However, we are convinced that the proof in this case does not establish that Elizabeth was a neglected child or in need of supervision *1259 and that any such finding by the judge was manifestly in error. Therefore, the Ville Platte Juvenile Court had no jurisdiction to determine her custody and its judgment rendered on April 6, 1978, must be reversed and this proceeding dismissed.
With reference to the previous orders of that court concerning this child, it is well settled in Louisiana that an ex parte custody order granted by a trial judge without notice, service of pleadings and without affording a hearing to the parent having custody of the child is null and without effect. Saizan v. Saizan, 311 So.2d 281 (La. App. 1 Cir. 1974); Simon v. Calvert, 289 So.2d 567 (La.App. 3 Cir. 1974), writ denied 293 So.2d 187 (La.1974). Consequently, the appellant is entitled to have the orders of the Ville Platte Juvenile Court dated December 31, 1976, and January 19, 1978, purporting to affect Elizabeth, set aside.
For the reasons assigned, it is ordered, adjudged and decreed that the orders of the Ville Platte City Court, sitting in its juvenile capacity, entitled "State of Louisiana in the Interest of Elizabeth Denise Thompson", dated December 31, 1976, and January 19, 1978, are annulled and set aside. The judgment appealed herein is reversed and these juvenile proceedings are dismissed.
REVERSED AND RENDERED.