KNOLL, Judge.
The Thirtieth Judicial District Court of Vernon Parish, sitting as the Juvenile Court, entered a judgment declaring the minor child, Angela Weaver, in need of care and neglected by her divorced and remarried mother, Glennys Vargas. The court granted custody of the child to the father, Donald Ray Weaver.
This appeal, brought by Angela’s mother, Glennys, contends the juvenile court did not have jurisdiction under LSA-C.J.P. Art. 15 et seq., and, that the juvenile court erred in sustaining the objection to the relevancy of evidence of the father’s character prior to 1980. We affirm.
FACTS
Angela was three years of age when her parents were judicially separated in 1978 with legal custody awarded to her mother. All parties were living in Shreveport at that time. Shortly after the separation Glennys moved to Vernon Parish where her mother and other relatives resided.
On June 12, 1978, the Vernon Parish Office of Human Development received information from appellant’s mother, Mrs. Melba Bowers, expressing fear that Glennys was going to neglect Angela. The following day the agency received a complaint from Mrs. Patsy Sheppard stating that Angela was being neglected.
The Office of Human Development contacted Glennys and commenced an investigation. Glennys told the Human Service Worker that she and her child were moving in with her mother whereupon the agency stopped further proceedings.
In January, 1979, Glennys moved to Texas leaving Angela in Vernon Parish. The Office of Human Development then petitioned the juvenile court for placement of Angela in foster care. Glennys stipulated that the custody of Angela should be transferred as recommended by the Department. On February 22, 1980, judgment was rendered placing her with her maternal uncle and aunt, Mr. and Mrs. Robert Mitchell.
From that time until Angela was placed with her father in 1981 under a temporary order of custody, the child literally went “from pillow or post”, as pointed out in the juvenile court’s oral reasons for judgment:
******
“... The most difficult task perhaps that we judges have is to determine the future of a child and the custody of that child. Based, however, upon the evidence adduced before me today, it is not difficult from a legal standpoint. It may be emotionally difficult as always it is to tell one *326 parent or the other that he or she is deprived of the custody of his child. But legally there is no — this isn’t one of those close cases that we frequently see. It’s high time that this child, Angela, that her statis [sic] be established. The child has been transported back and forth from pillow or post, so to speak, and the evidence reflects that the mother has manifested, at least, in the past, an instability, emotionally or otherwise, an [sic] perhaps an immaturity which would make it very questionable for this Court to restore to her the custody of the child even if the father were not here applying for the custody.. .. ”
We note of importance to this case the fact that Glennys was married to Salvador Vargas on February 5, 1980, before Angela was placed in foster care. It was not until the child was placed with her father in 1981, that Glennys contested the proceedings.
Mr. Weaver has a stable family with his present wife. He loves Angela and he is capable of providing for her welfare. Angela is well adjusted and happy living with her father, and relates well with Mrs. Weaver. Angela is enrolled in the first grade and is performing satisfactorily.
JURISDICTION
The juvenile court has jurisdiction to adjudicate custody of a child when it is established that the child is neglected, delinquent, or in need of supervision. LSA-C. J.P. Art. 15; State v. Robinson, 353 So.2d 442 (La.App. 3rd Cir.1977); State, In The Interest of Thompson, 372 So.2d 1255 (La. App. 3rd Cir.1979). Once the court has adjudicated a child in need of care, it may “place the child in the custody of a parent or such other suitable person on such terms and conditions as deemed in the best interest of the child.” LSA-C.J.P. Art. 85(A)(1). The evidence is overwhelming that the child was neglected by her mother for a period in excess of four years.
We find that clearly the juvenile court had jurisdiction and it correctly placed Angela in the custody of her father.
EVIDENCE OF FATHER’S CHARACTER PRIOR TO 1980
The court was well apprised of the father’s character, as well as the mother’s, from reports it received from the Office of Human Development, as well as the evidence presented at trial. In sustaining the objection, the court ruled:
“... I’m not going to get into remote history, ancient history, how the parties didn’t get along way back then and so forth....”
******
“BY MR. COSENZA:
The child was born in 1975, I believe. I believe that any evidence relative to the father’s relationship with that child during the period of that child’s life is of extreme importance today in determining who is best suited to take care of her. On that basis, I object....”
******
“BY THE COURT:
All right. I want to recite for the record that an additional reason for limiting it to these last two and a half years, and frankly I think the Court is being ultra liberal in that ruling, in letting you go back that far. An additional reason for that ruling, however, is that you have not alleged one thing concerning which you— concerning those matters which you related to the Court at bench conference .... ”
The court’s determination in custody cases is entitled to great weight. Its decision is accorded much discretion and will not be reversed on appeal except in the clearest case of abuse of such discretion. In determining custody, the best interest of the child is paramount. The juvenile court must weigh the evidence to make its determination.
We find the juvenile court was correct in its ruling.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
GUIDRY and STOKER, JJ., concur in the results.