MARVIN, Judge.
In this action under LRS 14:403, the mother of DEM, born October 18, 1979, appeals a judgment which “continued” the custody of DEM, as a “child in need of care” in the Ouachita Parish Department of Health and Human Resources of the state. We reverse and render judgment ordering the return of custody to the mother.
*515 The mother first surrendered the temporary custody of DEM on October 13, 1981, to DHHR, by signing an affidavit which said in part:
“I am presently suffering emotional problems of my own and am not able to provide my child with the care and protection he needs. I am fearful of doing bodily injury to my child. I believe that I am presently verbally abusive to him.
“I, therefore, am in agreement that [DEM] be adjudicated a child in need of care and be continued in the temporary legal and physical custody of the [DHHR], and continue in his foster home placement.”
She thereafter periodically signed 60-day and 90-day agreements for DHHR’s continued care of the child. Each agreement stated that its objective was to reestablish the mother’s relationship with DEM and to have him return to her home to live. When the mother began to insist that DEM be returned to her and when she began to visit DEM at times which were not authorized by DHHR, this action was filed on May 6, 1983. DHHR sought to have DEM adjudicated a child in need of care.
“[A] ‘child in need of care’ means a child:
“(a) Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental or emotional health of the child;
“(b) Whose physical, mental or emotional condition is substantially threatened or impaired as a result of the refusal or neglect of his parent to supply the child with necessary food, clothing, shelter, medical care, counseling or education, or as a result of the parent’s neglect or imposition of cruel punishment; or
“(c) Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or because of any other reason.” Art. 13. (14), CJP
LRS 14:403 is designed for the protection of children who are subjected to abuse or neglect within the meaning of parts B(3) and (4) of that statute.
“(3) ‘Abuse’ is the infliction, by a person responsible for the child’s care, of physical or mental injury or the causing of the deterioration of a child including but not limited to such means as sexual abuse and/or the exploitation or overwork of a child to such an extent that his health, moral, or emotional well-being is endangered.
“(4) ‘Neglect’ is the failure, by a person responsible for the child’s care, to provide the proper or necessary support, education as required by law, or medical, surgical, or any other care necessary for his well-being. No child who is being provided treatment in accordance with a recognized religious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused.”
Juvenile authorities are given the discretion to quickly remove the child from such circumstances and eventually, through the district attorney, to have the child formally adjudicated as a child in need of care under Art. 14 ff, CJP. § 403(G)(9). See State in interest of Brown, 387 So.2d 1366 (La.App. 4th Cir.1980).
While juvenile laws are designed to protect a juvenile in need of care, these laws do not allow the state to usurp parental authority at its whim. See Dillon v. State, 336 So.2d 1066 (La.App. 2d Cir.1976). The law does not guarantee perfect parents or children. The burden is on those resisting the parent’s demand for custody to show by legal and competent evidence that the parent is disqualified or unfit to have custody, or is incapable of caring for the child, or that it is detrimental to the child’s welfare to place him or her under the care of the parent. State v. Department of Public Welfare, 170 So.2d 549, 552-553 (La.App. 3d Cir.1965). This burden must be met by competent evidence. State in Interest of Prestridge, 323 So.2d 868 (La.App. 2d Cir.1975). That evidence must be clear and *516 convincing. State, in Interest of Thompson, 372 So.2d 1255 (La.App. 3d Cir.1979).
This mother testified that she temporarily placed DEM with the foster care program of DHHR because of financial and emotional problems, wanting to “get herself together in order to be a better mother ...” She said she did not realize that she would have so much trouble in getting him back. She said that after she saw a Shreveport psychiatrist (Dr. Stockard) in July 1982, her visitation privileges with her son were “stopped” or “curtailed.” The mother said she signed the several 60-day and 90-day agreements to maintain her employment and place of residence because she understood that if she did not so agree, she would “lose” her visitation rights.
The affidavit of October 18, 1981, which the mother signed was prepared by a DHHR worker. Testimony of other workers and counselors for DHHR established that the mother did have emotional problems and felt anxieties and inadequacies because of past circumstances in the mother’s life. There is no factual evidence that the mother physically, mentally, or verbally abused the child during the first two years of his life or during any visit with the child after he was placed in foster care. Abuse under LRS 14:403(B)(3) must be such that it fits that statutory definition. The Shreveport psychiatrist, who saw the mother on one occasion and reported that she had a severe mental illness, was not called to testify and was not cross examined. Other professionals, for DHHR, who saw the mother with some regularity over many months presented more flattering reports that the mother was improving and “finding” herself. Compare Prestridge, supra. The counselor who had continued contact with the mother stated that “I have seen no evidence of abuse. From what she has told me, I know of nothing she has done. In fact, one reason she gave for placing the child was to prevent abuse, which would seem to say to me that if she felt she was going to abuse the child, she would do something to prevent it. I’m not convinced that she would have abused the child, if she had not placed it.”
Under these circumstances, we must conclude that the juvenile court was clearly wrong in adjudicating DEM as a child in need of care.
The purpose of LRS 14:403 is stated in part A of the statute:
“The purpose of this section is to protect children whose physical or mental health and welfare are adversely affected by abuse and/or neglect and may be further threatened by the conduct of those responsible for their care and protection by providing for the mandatory reporting of suspected cases by any person having reasonable cause to believe that such case exists. It is intended that as a result of such reports the protective services of the state shall be brought to bear on the situation in an effort to prevent further abuses, and to safeguard and enhance the welfare of these children. This section shall be administered and interpreted to provide the greatest possible protection as promptly as possible for such children.
We cannot find that the physical or mental health and welfare of DEM are “adversely affected by abuse ... or neglect” by the mother.
Under these circumstances we shall reverse the judgment below which orders custody of DEM continued with DHHR and hereby order that the custody of the child, DEM, be returned to his mother. Costs, here and below, to the extent that they are legally assessable to DHHR, shall be paid by DHHR.
REVERSED AND RENDERED.
SEXTON, J., concurs and assigns written reasons.