WARD, Judge.
This is a child custody case in which the only issue is whether the Trial Court abused its discretion when that Court followed the Department of Health and Human Resources recommendation on custody, awarding custody to the paternal grandparents with the ultimate goal of reunification of the child with his natural parents.
In March 1985 the Department of Health and Human Resources received J.G., Jr., a six week old baby, into its legal custody following an investigation by the Plaque-mines Parish district attorney’s office into allegations of child abuse while J.G., Jr. was in the care of his natural parents, J.G., Sr. and B.G. In February 1987, the District Court which had placed J.G., Jr. into the DHHR’s legal custody held a review hearing pursuant to La.R.S. 46:2427 to determine whether custody, both legal and physical, should be changed. The major parties involved in this hearing were: 1) J.G., Sr. and B.G., who wanted custody of J.G., Jr. returned to them; 2) the DHHR, which recommended placing J.G., Jr. into the physical custody of his grandparents with the intention of eventually returning him to his parents; and 3) J.G., Jr., through his court-appointed attorney, who sought legal and physical custody for the present foster parents.
The Trial Court ruled, in accordance with the DHHR’s case plan for reunification, that legal custody would remain with the DHHR and physical custody would be given to the grandparents with eventually placement with J.G., Sr. and B.G. The Court also denied a motion made by the child’s attorney to modify disposition and change legal custody from the DHHR to the foster parents and denied a writ of habeas corpus petitioned for by the natural parents. The Trial Court’s judgment was partially stayed by this Court. Pending appeal, therefore, the child has remained with the foster parents; however, pursuant to this Court’s order, parental visitation has resumed after having been eliminated by prior orders obtained in the District Court.
Through his counsel, the child appealed the custody rulings made in the review hearing and assigns errors alleging that 1) the Trial Judge’s ruling was based on an inapplicable precedent; 2) the Judge failed to make a finding as to the best interest of the child; 3) the Judge failed to articulate the appropriate elements of the “best interest” standard; and 4) the Judge refused to admit evidence relevant to the father’s fitness to care for the child. The natural parents appealed the denial of their petition for writ of habeas corpus.
A review of the background of this case is necessary to properly consider the assignments of error. Following the incident of abuse in March 1985, the Court found J.G., Jr. to be a child in need of care, La.C.J.P. art. 13, and placed him in the legal custody of the DHHR and physical custody of his paternal grandparents. Although the child’s parents denied any knowledge of or involvement in the abuse which caused a broken arm and two broken ribs, both parents cooperated and complied with the DHHR’s case plan and began regularly attending parenting classes and evaluation sessions. Because of strained relations between J.G., Jr.’s parents and his physical custodians, his grandparents, the child was briefly placed in the physical custody of foster parents who were friends of his parents.
In October 1985, J.G., Jr. was returned to his parents after the DHHR concluded that there was no valid reason to keep physical custody from the parents once they had complied with all of the rehabilitative measures required by the DHHR or the Court. *197 Five weeks later J.G., Jr. was again removed from his parent’s custody following an investigation into reports of further abuse. In December 1985, J.G., Jr. was placed in another foster home where he has remained to date.
Based on the record before us, we do not believe that the Judge abused the discretion accorded to him in custody decisions. Appellant’s assignments of error, while meriting consideration, are insufficient to prove an abuse of discretion.
Appellant’s first assignment of error focuses on the Judge’s reference to In re Custody of Reed, 497 So.2d 1284 (La.App. 4th Cir.); writ denied 498 So.2d 743 (La. 1986), in his Reasons for Judgment. Reed involved a custody dispute between a natural mother and a couple who raised a two year-old child from birth pursuant to a defective act of surrender granted by the mother. The Court held that a biological parent who loses custody at birth by virtue of a defective act of surrender and almost immediately seeks return of the child does not forfeit her right to rear the child simply because judicial delays, brought about primarily by the non-parents, allow sufficient time for an emotional bond to form between the child and the non-parents. Because the Reed case did not involve child abuse, Appellant asserts that the Judge’s reliance on the case is inappropriate in this child in need of care review hearing.
The Judge’s use of Reed, however, is not as pervasive as Appellant would have us believe. Primarily, the Trial Judge expressly observed that while the case was distinguishable, a rationale which the Court had articulated in Reed was pertinent. Additionally, the Judge specifically recognized that the Reed decision itself distinguished cases involving child abusers or drug addicts. Therefore, his decision, he explained, was based on factors peculiar to this case; specifically, J.G., Sr.’s favorable prognosis and the DHHR’s plan for gradual reunification.
Furthermore, the Reed rationale is applicable to the extent that it refutes testimony given by Appellant’s expert suggesting that J.G., Jr. should not be returned to his parents because at least one year had elapsed from the time he was taken away from them and a psychological bond had formed between the child and his foster parents. In addition to the arbitrariness of the expert’s time limit, there is ample evidence in the record to demonstrate that there existed a similar psychological bond between J.G., Jr. and his natural parents. The Judge’s decision refusing to allow the mere passage of time to dictate his custody determination is, therefore, not erroneous, especially when his remarks make it clear that the prevailing factors were the circumstances of this case. The Judge’s use of the Reed case was not erroneous.
In Appellant’s second assignment of error, he asserts that the Judge failed to make a finding as to the best interest of the child. The Judge is required to consider the best interest of the child when making custody decisions in child in need of care cases. La.C.J.P. art. 85. Additionally, the Judge is required to impose the least restrictive disposition consistent with the circumstances of the case, the needs of the child, and the best interest of society. La. C.J.P. art. 86(A).
The Judge articulated his consideration of the child’s best interest as follows:
Much has been said concerning the best interest of the child. As the Fourth Circuit said in In Re Custody of Richard Clayton Reed, 497 So.2d 1084, while not precisely on all fours with this case, it is sufficiently analogous to be of instruction here:
‘The best interest of the child must be cautiously weighed against the rights of the parent. It may certainly be in the best interest of many children if they were reared in homes other than that of their parents, but that test standing alone cannot be used to deprive a [parent] of the custody of the child.’
A fortiori, that test standing alone in this case should not be permitted to thwart the attempted reunification of this struggling family.
*198 The Judge’s statement acknowledges that ample evidence was presented at the hearing precisely on the issue of J.G., Jr.’s best interest and thus provides sufficient proof that the Judge evaluated and weighed this evidence. That the Judge was unwilling to consider the child’s best interest solely in terms of where the child would be “better off” — financially, educationally or emotionally, is not manifestly erroneous. Because the child’s best interest is not the exclusive consideration which the Judge must review, we also find no error in the Judge’s decision to consider the rights of the natural parents under the facts of this case.
Throughout the course of these proceedings, B.G.’s ability to properly care for her son was never questioned nor was there any indication that she was suspected of abusing J.G., Jr. Initially, the experts gave a guarded and somewhat negative assessment of J.G., Sr.’s amenability to rehabilitation. This evaluation was generally a result of his history of a few violent episodes as well as the experts’ consensus that his denial of participation in the abuse was hindering therapy. Nonetheless, J.G., Sr., like B.G., actively took part in the services offered by the DHHR and in visitation.
In September and December 1986, an assistant district attorney obtained ex parte orders suspending visitation and terminating J.G., Jr.’s participation in family therapy. The orders, signed by a Judge who was not involved in the case, were presumably based on affidavits by the foster parents, day care workers, and a doctor who had observed J.G., Jr. with his foster parents in one session, all purporting to show that J.G., Jr. reacted poorly to visits with his natural parents. The DHHR viewed visitation as a crucial part of the reunification plan and found no evidence that J.G., Jr. was adversely affected by visitation.
Much progress was made on reunification when J.G., Sr. admitted to his therapist in October 1986 that he injured his son in March 1985. J.G., Sr. explained that his previous denial was caused by his fear that his son would be taken away permanently and given to either set of foster parents, all of whom he perceived wanted to adopt his child. He further explained that he confessed when it became apparent to him that the DHHR did not plan to place J.G., Jr. for adoption.
Much of the testimony at the review hearing attested to the progress that J.G., Sr. has made in therapy, the substantial changes in his behavior, motivation and insight, as well as his apparent commitment to further improvement and change. For the Judge to have considered all of these factors concerning the child’s parents does not indicate that he failed to consider the child’s best interest; rather, it enabled him to determine which placement was in the child’s best interest at a particular time.
Appellant also assigns error to the Judge’s failure to articulate the appropriate elements comprising the best interest standard. The best interest consideration, however, is inherently incapable of being defined in terms of elements; the “best interest” of a particular child is always unique to each case. As long as the facts support a finding that the Judge acted in a child’s best interest in custody decisions, a more specific listings of the elements involved is unnecessary and often impossible.
Our review of the record reveals that the Judge, while accounting for other relevant considerations, did not act contrary to J.G., Jr.’s best interest. All of the experts, in medicine or social services, who evaluated or treated J.G., Sr. believed that he was progressing well in therapy, was capable of becoming a good parent, and was willing to work on his problems. It is of little concern that the last psychological evaluation of J.G., Sr. prior to the hearing noted significant improvements but reported that his personality profile was unchanged. As the evaluator explained, it takes a number of years for the profile to change because it is based on prior actions. Overall, the testimony indicated that J.G., Sr. was no longer a threat to his child.
Appellant argues that a change in custody alone will be detrimental to J.G., *199 Jr. In support of this allegation, Appellant offers the foster parents’ claims that J.G., Jr. experienced sleep disturbances and displayed aggressive behavior after visitations. The problems observed by the foster parents, however, were never medically substantiated nor proved to have been caused by visitation. There was also testimony which reveals that any anxiety experienced by J.G., Jr. could have likely been caused by being forced to separate from his natural parents.
Moreover, there was no evidence which proved that J.G., Jr. would be permanently harmed by a change in physical custody. Appellant cites Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) to support his theory that J.G., Jr. will be seriously harmed by removing him from his foster parents. Bergeron, however, involved a parent versus parent custody dispute and articulated a burden of proof for an award of permanent custody. In the instant case, where custody of J.G., Jr. is to remain with the DHHR subject to change depending on future circumstances, the considerations in a permanent custody situation are irrelevant.
Appellant’s reliance on In re Bourg, 501 So.2d 862 (La.App. 5th Cir.1987) is likewise misplaced. In Bourg, the Court awarded custody of a child to relatives who, four years before, were appointed by the child’s natural mother as custodians. Relying on a psychological evaluation of the child indicating that the child was experiencing problems which would worsen if the child were removed from the home where she had lived almost exclusively during her six years of life, the Court determined that it would not be in the child’s best interest to return her to her mother at that particular time. The Bourg case is distinguishable because the only objective assessments of J.G., Jr.’s interactions with either his parents or his foster parents indicate no unusual findings.
The weight of the testimony in this case, therefore, reveals that the DHHR is acting in the child’s best interest and that the Judge, by following the DHHR’s case plan, likewise acted in J.G., Jr.’s best interest. We find no abuse of discretion in the Judge’s decision to subject J.G., Jr. to possible short term disruption in order to further the child’s best interest and promote the goals of the state agency charged with the responsibility of resolving family problems.
Appellant also assigns error to the Judge’s refusal to admit certain testimony into evidence. The testimony pertains to the investigation associated with the child’s second removal from his natural parents, an incident which the DHHR has admitted was based on reports without a medical basis and predicated merely on speculation and rumor. Appellant asserts that one of the experts recommending reunification did so on the assumption that J.G., Sr. confessed to the only incident of abuse which had occurred. The evidence sought to be introduced, Appellant claims, proves that there were other incidents and thus the reunification plan is based on a fallacious assumption.
The Judge considered the testimony, which was proffered for our review, irrelevant because the fact that J.G., Sr. abused his child at least once and confessed to the abuse was sufficient to enable the Trial Judge to make a decision on custody. Additionally, the expert whose recommendation Appellant sought to discredit did not consider other incidents of abuse important to his therapy goals because the confession of a single incident of abuse was the only necessary element to commence effective therapy.
We believe the Trial Court erred, because although perhaps not relevant for the purposes described by the Trial Judge or the expert, the testimony was relevant and admissible to show J.G., Sr.’s propensity for continued acts of abuse. Therefore, we have reviewed the proffered testimony and find that it does not contain proof of other incidents of abuse. Rather, the evidence, which is based on rumor and speculation, is overwhelmingly contradicted by other testimony given by a number of witnesses. Thus, we find that the evidence would not have changed the decisions made at the hearing.
*200 We now turn to the issue appealed by the natural parents, that is, whether the Judge erred in denying their petition for writ of habeas corpus. The natural parents assert that the Court has no jurisdiction over the case because J.G., Jr. was never adjudicated a child in need of care and thus, any orders depriving them of the custody of their son are illegal.
In denying the writ of habeas corpus, the Judge relied on State in the Interest of Thompson, 372 So.2d 1255 (La.App. 3rd Cir.1979) for the proposition that the magic words “child in need of care” need not be used if the proceedings reflect that there was a factual basis upon which the adjudication could have been made. See also, State v. Robinson, 353 So.2d 442 (La.App. 3rd Cir.1977).
Following the incident of abuse in March 1985, there was sufficient evidence in the record to indicate that J.G., Jr. was a child in need of care. Furthermore, although the minute entry for the July 17, 1985 adjudication hearing fails to state that the Court adjudicated J.G., Jr. as a child in need of care, the minute entry for the first hearing in the matter on March 20, 1985 states that the Court found the child to be in need of care. Thus, even if the “magic words” must be pronounced by the Court, once this was done in March 1985, the Court was vested with jurisdiction to determine custody matters indefinitely.
Accordingly, finding no error in the Judge’s ruling on the requested change in custody or his denial of the writ of habeas corpus, as well as his decision to adopt the DHHR’s case plan for gradual reunification, we affirm the Trial Court judgment. All Costs of appeal are assessed to Appellant.
AFFIRMED.