536 So.2d 450 (1988)
STATE of Louisiana in the Interest of Michelle BRADFORD.
No. CJ 88 0354.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
*451 Thomas C. McKowen IV, Clinton, for defendant-appellant Sheila Bradford.
George H. Ware, Dist. Atty., Charles A. Shropshire, Asst. Dist. Atty., Clinton, for plaintiff-appellee.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
COVINGTON, Chief Judge.
The issues presented in this appeal are whether the trial court erred in adjudicating a child in need of care and her mother in need of supervision.
Sheila Bradford appeals the judgment placing her infant daughter Michelle in the custody of the Department of Health and Human Resources (DHHR), but maintaining actual physical placement with appellant. The judgment also required that Sheila participate in a program to help her develop her parenting skills.

FACTS
The record reflects that Sheila is a 21-year old unmarried woman who has a severe hearing impairment. She graduated from the Louisiana School for the Deaf. Sheila also is mildly mentally retarded. Complaints were received by the Office of Human Development on July 2, 1987, regarding Sheila and her daughter Michelle, who was 18 months old at the time. On investigation of the complaints, a social worker found that Sheila and Michelle had been residing with Sheila's two sisters, Anna Mae and Kathie Bradford, and Anna Mae's two children, in a two bedroom house, which the social worker was not allowed to view, other than the living room. After a fight in which Sheila claimed her sisters had beat her up, the sisters allegedly threw the baby's and Sheila's clothes out of the house. Sheila and Michelle subsequently spent two nights at other relatives' homes, but returned to live with the sisters again.
Sheila, who reads lips and can speak to some extent, admitted to the social worker, Dorothy Hardy, that this incident was not the first time she had had to seek shelter for herself and Michelle. Ms. Hardy testified, "... based on the information she gave me, ... this had become a chronic problem where she had to seek housing for she and her baby."
Although Sheila is the named recipient of various forms of government assistance, such as AFDC, SSI, and SS benefits, totalling $526.00 a month, and the household receives food stamps for $288.00 per month for the six residents of the household, there were alleged problems with inadequate food and clothing for Michelle. Ms. Hardy testified,
[W]hen I talked with Sheila during the second visit and on July 3rd part of the fight in the house is about who cooks, what's cooked, Annie Mae and her kids eat first and if anything is left and whatever is left Sheila and her baby has and if they decide not to cook there's nothing there for Sheila or her baby.
On one of the three visits Ms. Hardy made to investigate the situation, the baby was without diapers.
The record also indicates that the quarrels between Sheila and her sisters are not *452 limited to words or bodily contact. One of Sheila's aunts testified that on at least one occasion, Sheila admitted Anna Mae had pulled a gun and used it to strike Sheila.
Testimony indicated that after these fights, Sheila would usually grab Michelle and stand outside by the road, or in a ditch, irrespective of weather conditions, and refuse to come inside. On at least one occasion, this occurred in the rain.
Sheila underwent psychological testing by Dr. Fred Tuton, a clinical psychologist, at the order of the trial court. Dr. Tuton testified that his evaluation revealed Sheila to be mildly retarded with a performance I.Q. of 62, and functionally illiterate, with reading ability below third grade level. He found her to have extremely immature personality development and poor parenting skills, being unable to answer basic questions concerning parenting skills. Since his evaluation of Sheila was conducted with the aid of a certified interpreter, he did not feel Sheila's responses were based on her hearing disability. His opinion was that Sheila would be incapable of either managing her own affairs alone or of caring for her child independently, because she would require instructions from whoever was helping her: "She has to be told each time what to do, when to do it and how to do it really."
This evaluation was supported to some extent by testimony from two of Sheila's relatives. Lou Ida Bradford, Sheila's aunt, testified that sometimes when Michelle's diaper is wet, "She'll be wet like that for a time but we'll tell her [Sheila] to change her and she'll go change her." In response to questioning as to whether Sheila notices such things independently, Ms. Bradford responded, "I really don't know all the time but [when] she's down there, we tell her and she says she's gonna go home and change her but when she's at home I really don't know."
Henry Bradford, Sheila's uncle, responded to questioning on Sheila's parenting in one instance as follows:
Q. Have you ever noticed Sheila in a situation with the baby that she didn't know how to handle or she didn't know what to do?
A. Well, yes sir, in some cases and then her sister Annie Mae was over there, I've been around sometime when they had to bring the baby to the doctor, you know, but she was always there, you know, to help with [her].

LAW
LSA-C.J.P. art. 13(14)(b), in pertinent part, defines a child in need of care as a child:
Whose physical, mental, or emotional condition is substantially threatened or impaired ... as a result of the parent's neglect....
Subsection (c), in pertinent part, also defines a child in need of care as one:
Who is without necessary food, clothing, shelter, medical care, education, or supervision because of abandonment by, or the disappearance or prolonged absence of, his parent, or, for any other reason, is placed at substantial risk of imminent harm because of the continuing absence of the parent.... [Emphasis added].
Parents in need of supervision are defined in LSA-C.J.P. Art. 114(A), in pertinent part, as follows:
The court may adjudicate a parent in need of supervision if the court finds:
(1) a child under the parent's control is a delinquent, a child in need of care, or a child in need of supervision; and
(2) The habitual conduct of the parent has substantially contributed to the condition of the child.
It is evident from the record that this is not a typical case of neglect. Nowhere is it suggested that Sheila in any way actively intends any harm to her child or is uncaring about Michelle's welfare, as is the case in most instances of child neglect. Rather, because of her physical and mental limitations, Sheila is simply incapable of seeing to Michelle's care adequately. Because of the volatile nature of the relationship between Sheila and her sisters, and because of her mother's limitations, *453 Michelle's welfare is at risk within the meaning of the provision of the Code of Juvenile Procedure cited herein.
Under LSA-C.J.P. art. 73, the State must prove the allegations of its petition in such cases as this one by a preponderance of the evidence. While the trial judge gave no reasons for judgment, his findings that Michelle was a child in need of care and Sheila a parent in need of supervision are adequately supported by the record. We find no manifest error in his decision, and indeed, commend his creativity and sensitivity in maintaining the parent-child relationship by placement with the mother while attempting to remedy some of the problems through custody with DHHR.[1]
The trial court awarded the attorney appointed to represent Sheila $400.00 in attorney's fees, to be paid by DHHR. On appeal, the attorney requests that he be awarded an additional sum to compensate him for his time and efforts in pursuing this appeal, citing State in the Interest of Johnson, 475 So.2d 340 (La.1985). Johnson dealt with assessment of an indigent's attorney's fees against DHHR in termination proceedings based on abandonment. While this proceeding is not one for termination of parental rights, we find the rationale of Johnson applicable here, and amend the judgment to award an additional $400.00 as attorney's fees, to be assessed against DHHR. See also, State in the Interest of a Minor Male Child, 461 So.2d 1278 (La.App. 1 Cir.1984).
The judgment appealed from is amended, and as amended, affirmed.
AFFIRMED.
NOTES
[1] The record indicates that DHHR intended to have Sheila and Michelle reside with another aunt of Sheila's who had adequate space (2 empty bedrooms) and a willingness to help supervise Sheila with Michelle.