542 So.2d 1163 (1989)
STATE of Louisiana in Interest of BS, Appellee,
v.
PS, Appellant.
No. 20807-JA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
Department of Social Services by Catherine L. Stagg, Monroe, Lesa McGaha, Danny W. Tatum, Asst. Dist. Attys., Farmerville, for appellee.
Travis M. Holley & Associates by Travis M. Holley, Bastrop, for appellant.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The mother, PS, appeals an adjudication declaring her four-year old daughter, BS, in need of care and continuing custody with the state DHHR. Finding the evidence insufficient to support the adjudication, we reverse and render.

Facts
The facts are essentially undisputed and were adduced at the hearing chiefly through social worker Jeri Hart. Her agency had been involved with PS's household since February 1985. When she visited the home in March 1988, she learned that the child's father is deceased and PS was living in a trailer on her parents' property. Also living in the trailer were PS's boyfriend and cousin. PS admitted to Ms. Hart that she had left the child unsupervised in the trailer on one occasion. Ms. Hart noticed that PS had a latch on the child's bedroom door, and thought that she had been locking the child in. Ms. Hart thought this was unsafe and told her to remove the latch. She also told PS to have the child evaluated by Dr. Moncrief. Finally, she noticed the child had a linear mark on her face; the child said PS had hit her with a switch. Ms. Hart could not substantiate this statement, but said that unidentified collateral sources had reported seeing PS slap the child in the face before.
*1164 In September Ms. Hart returned to the trailer after a second anonymous tip that the child had been seen walking on Hwy. 2, the thoroughfare on which PS lives. This visit was also prompted by fears that PS was not making sufficient progress in her parenting skills, as well as by a phone call from Dr. Stephenson, whose testimony or report was not offered. Ms. Hart saw the latch was removed but the doorknob was reversed so PS could still lock in the child. Ms. Hart felt that PS had not always been cooperative with the investigation.
On September 28 Ms. Hart executed an affidavit alleging physical abuse and lack of supervision. On the basis of this affidavit the state obtained an instanter order on September 29. According to Ms. Brantley, the other social worker who testified at the hearing, the child was first taken to a foster home where she did well for a week or so but then began to be disruptive and unfriendly toward the other children. The child was then transferred to a home in Bastrop with no other children and "strong parents." Unlike Ms. Hart, Ms. Brantley stated that PS had been fairly cooperative with the agency and had agreed to additional counseling at the Mental Health Center in Ruston. She did not characterize the problem as one of neglect or abuse, but stated that mother and child needed some help in dealing with one another. She felt that PS was learning better parenting skills but that the child needed "behavior modification" that PS could not provide. Ms. Hart also stated that PS was capable of being a good parent.
The instant petition was filed on November 2. As of November 10, the date of the hearing, the child was still doing well in the second home.
At the hearing, PS admitted the child had gone to the highway but said this happened only once, early one morning while she was asleep. She testified she was cautious and particular about keeping the child away from the highway; she frequently locked the child in the bedroom at night to keep her from wandering off. She insisted she complied with the agency's every request. She denied ever slapping the child in the face or hitting her with a switch; she disciplined her by sitting her in a corner. PS's father corroborated her testimony, but admitted telling Ms. Hart that he didn't like PS to lock up the child or leave her unattended.
The judge ruled from the bench that the burden of proof was a preponderance of evidence. He found "some need of supervision" and noted that the state's actions had produced favorable results. Feeling it would be unwise to abandon the efforts thus far expended, he granted the adjudication as prayed for. PS appeals.

Discussion
A "child in need of care" is defined, in part, as one
Whose parent inflicts, attempts to inflict, or, as a result of inadequate supervision, allows the infliction or attempted infliction of physical injury or sexual abuse upon the child which seriously endangers the physical, mental, or emotional health of the child. LSA-C.J.P. art. 13(14)(a).[1]
PS urges by her first assignment that the juvenile court applied the wrong standard of proof. Under the Code of Juvenile Procedure, when the petition requests that the child be adjudicated in need of care, the state must prove the allegations of the petition by a preponderance of the evidence. LSA-C.J.P. art. 73. This is the standard of proof cited by the judge.
The jurisprudence, however, has not uniformly applied this standard. One line of cases, including those from this circuit, has required clear and convincing proof. See State in Int. of Gray, 353 So.2d 393 (La. App. 4th Cir.1977); State in Int. of Thompson, 372 So.2d 1255 (La.App. 3d Cir. 1979); State in Int. of DEM, 441 So.2d 514 (La.App. 2d Cir.1983); and dictum in State in Int. of RW v. JLW, 491 So.2d 652 (La. App. 2d Cir.1986) (on rehearing). The other line applies the code article as written. State in Int. of Bradford, 536 So.2d 450 (La.App. 1st Cir.1988); In Int. of Gray, 454 *1165 So.2d 307 (La.App. 4th Cir.1984).[2] The third circuit's recent case of State in Int. of August, 503 So.2d 717 (La.App. 3d Cir. 1987), cites both standards. We recognize the confusion afoot and acknowledge that the seminal cases of the first Gray and Thompson were litigated before the Code of Juvenile Procedure became effective on January 1, 1979. LSA-Acts 1978 No. 172, § 6.
The instant case does not require us to resolve the conflict because both sides have conceded that the standard of clear and convincing evidence should apply and because our review of the record discloses insufficient evidence to support the adjudication under either standard.
A summary of the evidence on which the state based its case exposes the inadequacy of proof. The state showed that (1) on one occasion the child wandered into the street (the state alleged, but did not prove, another incident), (2) the child was sometimes locked indoors and once left alone for about 30 minutes, and (3) the child once had on her face a linear mark that PS denied making. If the highway and locking incidents were completely unexplained, they might prove by a preponderance that PS, "as a result of inadequate supervision, allows the * * * attempted [or `possible'] infliction of physical injury * * * upon the child which seriously endangers the physical, mental, or emotional health of the child." However, the evidence clearly shows that the child, who is very energetic and somewhat unruly, got out of the house after another occupant had left the front door open; PS was asleep at the time and could have expected the child to be in bed as well. The law does not require perfect vigilance on the part of parents. State in Int. of Galvan, 384 So.2d 1000 (La.App. 4th Cir. 1980); State in Int. of DEM, supra. These incidents are not desirable, but under the circumstances they do not show that PS is unfit or disqualified to have the child. They certainly do not rise to the level of parental incompetence proved in a case like State in Int. of August, supra, or State in Int. of Bradford, supra. And they are considerably less than the alleged acts that were found not to justify an adjudication in State in Int. of RW v. JLW, supra.
Moreover, the incidents of locking the child in her room at night were not acts of malice or efforts to inflict emotional harm; they were a response to other incidents which PS had been instructed by the agency to rectify. Facing a dilemma, PS opted for the course of action that would protect the child from the imminent danger the highway posed, even if this meant temporary confinement to the bedroom. And yet the state depicts either option as unacceptable and indicative of parental unfitness.
Perhaps the thrust of the state's position is that a truly competent parent would not have created a situation where all courses of conduct are disapproved. Perhaps the state's position is merely that PS could stand to improve her parenting skills. Either way, the state's witnesses conceded that PS was fully cooperating with the agency's efforts, taking the child for evaluations and attending the appropriate counseling herself. Given PS's good faith efforts to improve her parenting skills and the progress she has achieved, we cannot accept that removal of custody is warranted. Even the state's witnesses admitted that parenting skills are best learned by doing, and the instant adjudication would seem to foreclose the opportunity for this prime means of improvement.
The other act the state proved was a single incident of apparent corporal punishment which PS sternly denied but Ms. Hart still considered inappropriate. Even if we concede that PS made the linear mark on the child's face, this appears to be an isolated occurrence. No other act of physical abuse was proved by competent evidence. The evidence rather shows that when PS must punish the child for screaming, she does so by confining her to a corner until she stops. This seems a reasonable exercise of discipline. Reasonable discipline is reserved to the parent. LSA-R.S. 14:18(4); State in Int. of Galvan, supra. See also LSA-C.C. art. 218.
*1166 The totality of the evidence adduced is not sufficient to prove the need of care under LSA-C.J.P. art. 13(14)(a), by either clear and convincing evidence or by a preponderance of the evidence. The juvenile court's contrary conclusion is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The adjudication is therefore reversed and set aside. The state's petition is dismissed, and custody of the minor child, BS, is ordered restored to the mother, PS. Costs are not assessed. LSA-R.S. 13:4521.
REVERSED AND RENDERED.
NOTES
[1] There is no allegation or proof that other subparagraphs of art. 13(14) apply.
[2] The fourth circuit has apparently abandoned its position in the first Gray case.